Statement of the Case.
MONROE, J.
This is a suit by Edward Walker, son, and Burton and Betsy Perkins (the latter being the wife of William Howard), grandchildren, of the slave marriage of Henrietta Walker, to annul her last will; the defendants being Henry McGwinn, son of Henrietta Walker by one Clint McGwinn, and Jesse Brown and Mary Brown (wife of John Evridge), children of the same by one Jesse Brown. The will purports to have been executed in nuncupative form by public act, and contains the following as its sole disposing clause, to wit:
“My name is Henrietta Walker. I am the widow of Henry Walker. My maiden name was Henrietta Johnson. I have four children, living : Edward Walker, Henry McGwinn, Jesse Brown, and Mary Brown, now wife of John Evridge. At my death, I give and bequeath to my daughter, Mary Brown, now wife of John Evridge, the house and lot I am now living in (over and above the amount coming to her from my succession) for her kindness, nursing, and taking care of me.”
The attack upon the wall is based upon the grounds, among others, that it was not executed at one time, without turning aside to other acts; that the words interlined were not written at the time of the execution of the instrument, and it does not appear that they formed part of it or were read to the testatrix; that the will is in violation of a prohibitory statute, in this: that it purports to dispose of the property in favor of a natural child of the deceased, when she left legitimate children or descendants.
The judge a quo decreed the will to be null on the two grounds first above stated, and holding that, if it be true that plaintiffs are the sole legitimate descendants of the testatrix, it would also be null upon the other ground, proceeded to consider the question óf plaintiff's legitimacy, with the result *868 that he concluded that, although there had been a marriage (from which plaintiffs are descended) between Henrietta and Henry Walker when both were slaves, the marriage had never been ratified after their emancipation, and hence produced no civil effects; that the plaintiff Edward Walker, as the natural son of his mother, had a standing in court to attack her will and demand a share in her estate, but that the plaintiffs Burton Perkins and Betsy Perkins (wife of William Howard), claiming by representation of their mother, Betsy Walker Perkins, a natural child of Henrietta Walker, had no such standing, “because representation is not admitted in irregular successions.” And he accordingly rendered judgment sending the plaintiff Edward Walker and the defendants, Henry McGwinn, Jesse Brown, and Mary (Brown) Evridge into possession, as natural children, of the estate of the decedent, in the proportion of one-fourth to each. Prom the judgment so rendered, no one has appealed save Edward Walker, and neither of the appellees has prayed for an amendment of the judgment, so that the questions of the validity vel non of the will and of the right of Burton Perkins' and Betsy (Perkins) Howard to share in the estate are eliminated, and the only question now presented for decision (between the four children who have been recognized as heirs) is whether the plaintiff Edward Walker became legitimated by the ratification, after emancipation, of the marriage between his slave parents.
The decedent, Henrietta (then called Henrietta Johnson, or Henrietta Samuels), and Henry Walker, belonged, prior to the Civil War, to the Cage family, and lived at Wood-lawn plantation, in the parish of Terrebonne, where, with the consent of their master, they were united in matrimony, and lived together as man and wife until November, 1862, when Henry left the plantation to become a soldier, going to Baton Rouge, where he joined the army on November 16, 1862,. and where he remained in 'the service until he died, on May 17, 1863, some four months or more after the promulgation of the proclamation of the President of the United States declaring that the slaves were free.
It is not pretended that he and the decedent ever met, after he left her in November, 1862, and it is conceded that she subsequently (to borrow the language of her brother) “got entangled” with one Clinton McGwinn, by whom she had two children, Richard, who died, and Henry, defendant herein, after which (again quoting the witness) “Jesse Brown came to the plantation, and he dangled around there and he got entangled with her” ; the result of the last entanglement being the two defendants, Jesse Brown and Mary (Brown) Evridge. Counsel for plaintiff argue that the relations between Henrietta and Clinton McGwinn were not established until after the death of Henry Walker, up to which event Henrietta conducted herself as Walker’s wife, and they say that, cohabitation having been impossible by reason of the separation of the parties, the ratification (after the Emancipation Proclamation) of the slave marriage must be considered as having been effected by reason of the facts that the parties remained true to each other, and that Henry spoke of Henrietta as his wife, and wrote to her and sent her money, up to the time of his death. The judge a quo found, however, that Henrietta’s entanglement with McGwinn began before Walker’s death, and that the testimony relied on as showing that the latter wrote to his wife or sent her money was unworthy of belief. The only witness who undertakes to say that Walker ever spoke of or wrote to Henrietta, after he left her, is one Jeff Butler, who also testifies that he went into the army with Walker; that he (Walker) died a little over a year later (the fact being that he died within sis months); that he (Thomas) hauled him (Walk *870 er) to the grave; that Walker died before the Emancipation Proclamation; that he died after the Emancipation Proclamation; that he knows nothing about the date of his death; that he does not know whether he died in winter or summer; that Clinton Mc-Gwinn was a single man (the other witnesses testifying that he was married); that the McGwinn children were on the plantation when he (witness) returned at the close of the war.
Jeff Thomas was examined under commission (for which reason counsel say that this court is as well able to judge his credibility as was the judge a quo). He says that Henry and Henrietta were married by Daniel Ask-ins, a negro “shepherd” (May Turner, Henrietta’s sister, says the ceremony was performed by Mr. Cage, the master; Jeff Butler says, by a negro named Lot; Phil Samuels, Henrietta’s brother, says, by one Ben Larkin; Ed Anderson says, by York Washington). Thomas also says that he went with Walker to join the army, but was rejected and returned to the plantation, and did not get into the army until some time in 1864. He nevertheless testifies, quite positively, that Walker died in the latter part of July, 1863; and that prior to his death he sent money to Henrietta, though the witness was not with him, and her sister and brother appear to have been ignorant of the receipt of any money. Thomas also testifies that Clinton McGwinn had a wife, with whom he lived, before and after the death of Henry Walker, and that he is “certain that Henrietta Walker and McGwinn never lived together as man and wife, either before or after the death of Henry Walker” (it being conceded that Richard and Henry McGwinn were the issue of their connection). May Turner (Henrietta’s sister), in answer to leading questions, testified that Henrietta recognized Henry as her husband after the latter had joined the army, and then occurs the following:
“Q. Well, how did she recognize him — what facts — tell us on what you base that statement? A. In regards of living a lady’s life. Q. No; in regard to recognizing Harry 'as her husband? A. Well, I suppose she, like anybody else, would change at times. I suppose when that notion took her — she needed support. Q. No; I am talking about from the time Harry Walker went to the war until he died. A. Well, I told you she acted like a lady — acted nice — lived like a married woman. She lived truly. * * * ”
Cross-examination: “Q. Can you swear that he [McGwinn] was not living with your sister? A. Well, of course, I can swear he was not living with her, because he was a married man. But, of course, what went on — oh! pshaw! Q. Go on, tell us what? A. Well, of course, somebody had to be decent. He had a wife. He could not play with women. His married wife was right there on the plantation.”
The property which was bequeathed by the decedent to her daughter Mary (Brown) Evridge was acquired from the father of the-latter by an act in which the vendee is described as “Miss Henrietta Walker,” and the-same description is used in two subsequent acts between “Miss Henrietta Walker” and! a building association, in which the former is further described as “unmarried, of lawful age,” etc. It is true that in her will the testatrix describes herself as the widow of Henry Walker, but she also says that her “Christian name was Henrietta Johnson” ; whereas Phil Samuels and May Turner, who say that she was their sister, testify that her name, before marriage, was Henrietta Samuels. Our conclusion, upon the whole, is that there was a slave marriage between Henry and Henrietta Walker, which was celebrated after the custom of the day with the consent of the master, but that the parties had ceased to live together prior to their emancipation, and never thereafter, whether by cohabitation or otherwise, ratified such marriage.
Opinion.
In the matter of Johnson’s Heirs v. Raphael, 117 La. 967, 42 South. 470, it was said:
“Slave marriages were binding in morals, but did not produce any of the civil effects which *872 result from such contract. Hence, when the parties were emancipated, they were at liberty to withdraw from or continue their relations. Logically a slave marriage can only be validated by ratification or express legislation.”
Pretermitting the question whether living together and cohabitation, after the emancipation of the parties, was absolutely essential to the ratification of such marriage, it seems clear that the ratification required some sort of affirmative action in which the two minds concurred, and that, when the parties were separated before their emancipation and never met afterwards, it could not have resulted from their mere silence, and still less where, by his or her conduct, one of the parties had indicated an intention to establish relations inconsistent with those established by the marriage to be ratified. In the instant case the evidence fails to satisfy us that there was ever any attempt or intention on the part either of Henry or Henrietta Walker to maintain the marital relation after they were emancipated. But, even if we could accept as true the testimony of the witnesses Butler and Thomas as to the attitude of Henry Walker, we are confronted with the fact that the attitude of Henrietta was quite different. No one pretends that she ever wrote to him; nor is it pretended that she made any attempt to reach him when he was dying, or mourned him when dead. And we agree with the judge a quo in the conclusion that her conduct before his death was inconsistent with the idea of a continuance of her relations with him.
The judgment appealed from is accordingly affirmed.