PER CURIAM. In this case, it having been called to our attention that the judgment of the lower court, doubtless inadvertently, declared the whole of Act 247 of 1920 unconstitutional, whereas it is apparent that only section 22 was involved, and inasmuch as our former decree affirms said judgment, it is the purpose of this per curiam to correct said judgment and decree and it is hereby corrected to the extent of holding and decreeing that said section 22 alone is unconstitutional; and as thus amended said decree is made final, and the rehearing denied.

---

(97 South. 35)

No. 25651.

Succession of WASHINGTON.

Opposition of WASHINGTON et al.

(June 4, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Marriage ☞40(11)—Plaintiffs held to have burden of proving slave marriage between their mother and one whose heirs they claim to be.**

Plaintiffs, suing to be recognized as children and sole heirs of decedent, have burden of proving a valid slave marriage between decedent and their mother.

2. **Marriage ☞16—Elements of valid slave marriage enumerated.**

To establish validity of alleged slave marriage, it is necessary to show consent of the parties and of their masters, a ceremony, and a ratification between the parties subsequent to emancipation.

3. **Marriage ☞50(1)—Evidence held insufficient to establish elements of valid slave marriage.**

In suit for recognition of plaintiffs as children and sole heirs of decedent, evidence *held* insufficient to prove the elements of slave marriage between decedent and their mother.

4. **Marriage ☞40(3)—Conduct of slaves following emancipation held to raise presumption against marriage.**

Where negro, following emancipation, took up residence apart from his alleged wife and family, and was generally regarded as a single man, and married another woman, while the alleged wife continued to reside where she previously lived, and never claimed to be his wife or disputed his second marriage, though knowing thereof, and never assumed his name, but consorted with other men, the presumption was against a slave marriage having taken place.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Percy Saint, Judge.

Suit in the succession of Reuben Washington, deceased, by Reuben Washington, Jr., and another, to be recognized as deceased's children and sole heirs, and to set aside a will. From a judgment rejecting their demand, they appeal. Affirmed.

Charles J. Mundy, of Thibodaux, for appellants.

Charles Leonard Wise, of Morgan City, for appellee.

ROGERS, J. Reuben Washington died, testate, at his domicile in Morgan City, parish of St. Mary, on April 6, 1922, leaving a widow, Betty Washington. By his will, made in nuncupative form by public act, he constituted his widow his universal legatee.

Plaintiffs sued, in his succession, to be recognized as his children and sole heirs, to have his widow declared not to have been his legal wife, and to set aside his will. Their demand was rejected, and they have appealed.

Plaintiffs claim to be the issue of a slave marriage contracted between Reuben Washington and Josephine Richard, with the consent of their respective masters, several years before the Civil War, the exact date being not shown, which marriage, they assert, was ratified by the cohabitation of the parties after their emancipation and up to the time

of their mother's death in December, 1890. They allege that, for a number of years prior to his death, their said father lived, and was in business, in Morgan City, where he accumulated some property, and that, while he had illicit relations with other women, he contributed to the support of their mother, who always continued to live in the parish of Lafourche; that he recognized them as his children, attended the wedding of plaintiff Sarah Washington to Thomas Perkins, and paid the funeral expenses of their mother when she died. They show the marriage of Reuben Washington to Betty Tolliver, on February 2, 1878, but aver said marriage to have been bigamous, and not entered into in good faith by Betty Tolliver, who, they allege, had a husband living at the time, and who also knew that their father had a wife then living.

The will was attacked on the grounds that the testator bequeathed his entire property to Betty Washington, ignoring plaintiffs, and that its execution had been procured by fraud and undue influence on the part of the universal legatee.

Plaintiffs have apparently abandoned their attack upon the will, and also the charge that Betty Tolliver was already married at the time of her marriage to Reuben Washington, and the only issue before the court is whether Reuben Washington and Josephine Richard contracted a slave marriage, which they ratified by cohabitation after emancipation.

[1, 2] The burden of proof is upon plaintiffs. In order to establish the validity of the alleged slave marriage, it is incumbent upon them to show (1) consent of the parties; (2) consent of the masters; (3) a ceremony; and (4) ratification by the parties subsequent to their emancipation. Succession of Walker, 121 La. 865, 46 South. 890; Johnson's Heirs v. Raphael, 117 La. 967, 42 South. 470.

[3] These essentials have not been satis-factorily proved by plaintiffs. The only attempt to establish the slave marriage is to be found in the testimony of the witnesses Arceneaux and Cæsar. The testimony of these witnesses, however, is of doubtful value, owing to their advanced ages and necessarily uncertain memories. Arceneaux was 112 years of age at the time he testified, and while he stated the parties were married by Father Menard, in charge of the Catholic Church in the town of Thibodaux, his testimony contains many contradictions and inconsistencies. At one place in his testimony he states that the marriage took place at Lafourche Crossing, and at another place he says the parties were married in the church in Thibodaux. He testified, further, that the wedding occurred 14 years before the Civil War began. According to this testimony, Reuben Washington would have been 13 years old at the date of the alleged marriage, as he was between 87 and 88 years of age when he died. It is highly improbable that Reuben could have been married at so early an age. Again, the witness testified that a number of white people were at the wedding, and he furnished the names of a few of those who were still living that he claimed to remember. The parties named were called as witnesses, and denied that they were present at, or knew anything of, the ceremony.

Augustine Cæsar, the other witness, was unable to give her age. She testified that she was present at the marriage, and that only colored people were there, in this respect contradicting Arceneaux. According to this witness the ceremony was performed by Father Menard in St. Joseph's Church in the town of Thibodaux. She was unable, however, to give the names of any persons who were present.

A circumstance to be considered in weighing this testimony, and as militating against its value, is the failure of the baptismal cer-

tificates of the plaintiffs, Reuben and Sarah, signed by Father Menard, to show their paternity. Each of these certificates sets forth the infant to be "a child of Josephine, slave of J. B. Richard." The certificates are in the usual form for illegitimate children born to slaves, chattels of their masters, as were their progeny, and not in the form provided for the issue of valid marriages. It is also to be noted that, while Reuben and Josephine were both present at the marriage of the daughter Sarah to Thomas Perkins by Father Menard in 1885, Reuben actually affixing his mark to the wedding certificate, as a witness, neither Reuben nor Josephine protested the omission from the certificate of a declaration of the legitimate filiation of the said daughter. If the parties had been married by Father Menard, as testified to, it is an extraordinary circumstance that neither Reuben nor Josephine called attention to the failure to designate Sarah as their legitimate child, and it is more remarkable that Father Menard failed to fill out the certificate in accordance with the facts. The omission could have resulted only from the knowledge possessed by Father Menard that no such marriage had taken place, and that Sarah was the illegitimate child of Reuben Washington and Josephine Richard.

It is to be observed, furthermore, that neither of these witnesses show affirmatively that the respective masters of Reuben and Josephine attended the wedding and consented thereto.

[4] Moreover, the conduct of the parties after their emancipation negatives any inference that the marriage had been performed and that they regarded themselves as husband and wife. Reuben Washington, who had enlisted in the Federal army in 1863, was discharged from the service January 29, 1866, at New Orleans. Instead of returning immediately to the parish of Lafourche, and to his alleged wife and family, he took up his residence at McDonoghville, La., and was living in that town with another woman in the summer of 1866. In the same year he located in Morgan City, where he first worked for a Mr. Nelson as a yard man. and then in driving piling for the wharf; subsequently he engaged in the drayage business, and later opened a small store. He lived, and was generally regarded in the community, as a single man, and had illicit relations with two or three women, before he married Betty Tolliver.

On the other hand, Josephine Richard continued to reside in the parish of Lafourche. She never claimed to be the wife of Washington, although she knew of his marriage to Betty Tolliver, and at no time did she ever dispute the marriage. She never assumed the name of Washington, and was known as Mrs. Josephine Pierre, under which name she appeared in several deeds of sale. She consorted with other men, and had a child named Louise, born in 1872 or 1874, by one of these men.

Under these facts and circumstances the presumption is against the slave marriage having taken place as alleged by the plaintiffs. Casimir v. Blanc, 10 Rob. 448.

Plaintiffs having failed to establish the marriage, which was incumbent upon them as the beginning of their proof, it becomes unnecessary to discuss the testimony offered upon the alleged ratification of the marriage by the cohabitation of the parties after their emancipation. Much testimony, necessarily conflicting, was elicited upon this point, which we may say, however, preponderates in favor of the defendant and tends to disprove the plaintiffs' averment that Reuben Washington and Josephine Richard cohabited and lived together as husband and wife after they had obtained their freedom.

Judgment affirmed.