ST. PAUL, J.
 

 Ira Ray, Sr.,' died intestate in 1920, leaving a widow in community, Delia Collins, and one child of his marriage with her, to wit, the plaintiff in this case. He had married Delia after the death
 
 of,
 
 one Charity, with whom he had lived as husband and wife for many years, and by whom he had two children; through whom the present defendants claim two-thirds of his estate; they being the descendants of those two children. There is no question as to rights of the surviving widow to one-half of the community property, nor is there any question as to plaintiff’s right to one-third of his father’s estate. The only question' involved is as to the right of defendants to inherit the two-thirds of their grandfather’s estate; which right is asserted by them and denied by plaintiff. The trial judge held that defendants were entitled to the two-thirds claimed by them, and plaintiff appeals.
 

 The only question involved is the validity vel non of the alleged marriage between Ira Ray and Charity.
 

 The facts of the case are these: Ira Ray and Charity were both slaves on the plantation of one Captain Smith. These two, being desirous of marrying, obtained the consent of their master, and thereupon they stood together, side by side, before him, and he joined their hands and pronounced them man and wife. Thereafter they lived together on the plantation, and were recognized by all as husband and wife.' After emancipation, they continued to live as man and wife, andi were so recognized by their friends.
 

 The trial judge thought this sufficient to establish a slave marriage, and so do we.
 

 In Succession of Blackburn, 154 La. 618, 98 So. 43, 44, this court, after referring to the jurisprudence, said: “We think the true solution and underlying basis for the recognition of a slave marriage is that there should have been a bona fide intention of the parties to assume, with the consent of their masters, the relation of husband and wife, and that this intention should have been carried out b.v the living together as such thereafter, in good faith, both before and subsequent to emancipation.”
 

 
 *562
 
 And notwithstanding some expressions used in Succession of Washington, 153 La. 1047, 97 So. 35, and Succession of Young, 166 La. 285, 117 So. 150, nevertheless it was never the intention of the court to modify said doctrine, since it was repeated verbatim in Marshall v. Smedley, 166 La. 364, 117 So. 323. As pointed out by the Court of Appeal in Smith v. Rambo, 15 La. App. 448, 131 So. 524, slave unions, contracted with the consent of their masters, and understood by the parties to be a marriage and not a mere loose union, required no special or formal ceremony, and produced their full civil effects if followed by cohabitation both before and after emancipation.
 

 As to the contention that slave marriage could not be validated except by following the provisions of Act No. 210 of 1868, p. 278, it was held as far back as 1878, Succession of Henry Pearce, 30 La. Ann. 1168, that the law was “entirely useless; it could neither add to nor detract from an already existing validity. * * * Their own consent and that of their masters were alone sufficient to give tt> their marriage an undeniable validity. * * * ”
 

 Decree.
 

 The judgment appealed from is therefore affirmed.