(107 So. 437)

No. 27064.

### HAMMON et al. v. SENTELL et al.

(Feb. 1, 1926. Rehearing Denied March 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Wills** ⊜⟶230—**Heir may consent that testator's concubine be placed in possession of immovable property left her by testator.**

Heir may consent that one who was concubine of testator at time of confection of his testament and death be placed in possession of immovable property left her by her paramour.

2. **Wills** ⊜⟶230—**Heirs accepting legacies under will held estopped from contesting, after long lapse of time, possession of immovable property, left to one whom they must have known was testator's concubine, and transferred to third person (Civ. Code, art. 1839).**

Under Civ. Code, art. 1839, heirs accepting legacies under will *held* estopped from attacking possession of immovable property left to one whom they must have known was his concubine, and her sons, after lapse of 13 years, and after property had passed into hands of third person.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by James H. Hammon and others against John M. Sentell and others. Judgment for the defendants, and plaintiffs appeal. Affirmed.

J. M. Grimmet, Robert A. Hunter, and Cecil Morgan, all of Shreveport, for appellants.

Thigpen, Herold, Lee & Cousin, of Shreveport, for appellees.

OVERTON, J. John Hammon, who was a bachelor, departed this life in the parish of Caddo in November, 1901. For some years prior to his death, and at the time thereof, Hammon lived in open concubinage with a negro woman, named Georgiana Owens, and had by her, as the fruit of this illicit union two children, William J. and Wesley Owens.

Hammon owned, at the time of his death, two plantations situated in the parish of Caddo, known as the White Cliff and Cuba plantations, and also some movable property. His nearest lawful relatives at the time of his departure from this life were four brothers and a sister. Hammon, shortly before his death, made his will, by which he bequeathed to each of his four brothers $1,000 in cash, to an orphanage in Shreveport, a similar amount, and to his sister $2,000. The remainder of his property, which consisted principally of the two plantations mentioned, he left to his concubine, Georgiana Owens, and to his two illegitimate children William J. and Wesley Owens.

Soon after Hammon's death his will was probated; the special legacies were paid in due course by the testamentary executor and receipted for, and the residuary legatees were, in 1903, sent into possession of the remainder of the estate, which, as stated, consisted largely of the two plantations mentioned. Wesley Owens, one of the residuary legatees, died two or three years after Hammon. His mother and brother were recognized as his heirs and sent into possession of his estate.

Georgiana and William J. Owens remained in possession of the two plantations, willed to them and to Wesley Owens, after the death of Wesley, until December 2, 1916. On that date Georgiana and William J. Owens sold the two plantations to John M. Sentell, one of the defendants herein, for $15,000. On December 31, 1920, Sentell sold to Mrs. Cecelia L. Ellerbe a part of the property so acquired by him for the sum of $12,174.38.

On March 29, 1923, the sister and the surviving brothers of John Hammon, deceased, and the children of Thomas J. Hammon, another brother of the deceased, who died some time after he had receipted for his legacy in the succession of his brother, brought this suit, first, for the purpose of annulling the will of John Hammon, deceased, in so far as

said will bequeathes to Georgiana, William J., and Wesley Owens the immovable property that belonged to John Hammon at the time of his death; secondly, for the purpose of being recognized as the owners of said immovable property, except of the part sold by Sentell to Mrs. Ellerbe; thirdly, for the purpose of recovering judgment against Sentell for $12,134.78, the amount he received for that part of the property he sold to Mrs. Ellerbe; and, fourthly, for the purpose of recovering judgment against Sentell for $5,000 for the rents and revenues of the property which accrued during his possession of the same; and, fifthly, in the alternative, should William J. and Wesley Owens be recognized as the duly acknowledged children of John Hammon, deceased, and the will as to them for that reason should not be declared entirely null and void, for the purpose of reducing the bequest made to William J. and Wesley Owens from a two-third undivided interest in said property to an interest not exceeding a one-fourth, and of being decreed to be the the owners of the part of said property remaining after said reduction, and of recovering from Sentell, in that event, a proportionate part of the amount received by him from Mrs. Ellerbe for the part of said property sold to her, and a proportionate part of said rents and revenues which accrued during Sentell's possession of said property.

The attack on the donation, made in the will to Georgiana Owens, is based upon the ground that, at the time said will was made, and at the time of the death of the testator, the latter was living in open concubinage with Georgiana Owens, and hence, that the bequest to her of an interest in said immovable property is absolutely null and void. The attack on the bequest made to William and Wesley Owens is based upon the ground that William and Wesley were the unacknowledged illegitimate children of the testator, and hence that the bequest to them of any interest in said immovable property is absolutely null and void, and that, in the event it should be held that William J. and Wesley Owens were his duly acknowledged children, then that the bequest to each of them exceeds the portion that a testator may leave to an acknowledged child, and is null and void to that extent and should be reduced accordingly.

The defendants filed an answer in which, among other things, they aver that, if Georgiana Owens should be held to have been the concubine of John Hammon, deceased, and hence incapable of receiving by donation mortis causa from him, and that William J. and Wesley Owens were the acknowledged children of John Hammon, then that the interest bequeathed to Georgiana Owens went to William J. and Wesley Owens, under the doctrine of accretion, and that the attempt made by plaintiffs to reduce the donations mortis causa, made to William J. and Wesley Owens, is barred by the prescription of five years. Besides these defenses, defendants, both in their answer and by separate plea, urge that plaintiffs are estopped to make the attack here made on said bequests and on the title acquired by Sentell. This plea is based upon averments to the effect that, as the sister and brothers of John Hammon, deceased, received, without objections, and receipted for, the cash legacies left them by their brother, and as they permitted the Owenses to be put in possession under said will of the property left the latter, and to remain in possession of said property for a number of years, without making any protest, those of them who survive, and the children of the deceased brother, the plaintiffs herein, are estopped to make said attack, especially as against the defendant, Sentell, who bought the property acquired by him on the faith of the public record long after the execution of said will.

[1] In our view the case may be disposed of on the plea of estoppel. While plaintiffs deny

that they had any knowledge of the fact that Georgiana Owens was the concubine of John Hammon and that William J. and Wesley Owens were the children of this illicit union until about the year 1919 or 1920, still our appreciation of the evidence leads us to the conclusion that those of the plaintiffs who are the surviving brothers and the sister of John Hammon, and that Thomas J. Hammon, the brother of John Hammon, who died some time after the death of his brother, and whose children constitute the remaining plaintiffs in this suit, did have knowledge of those facts at the time of the settlement of John Hammon's succession, and that those facts, at that time, were known in the family. Thomas J. Hammon, the deceased brother of John Hammon, lived for approximately two years on White Cliff plantation while John Hammon was living in concubinage on Cuba plantation with Georgiana Owens. The two plantations were not more than three-fourths of a mile apart. Tom made frequent visits to his brother on Cuba plantation. At this time the fact that John Hammon and Georgiana Owens were living in concubinage appears to have been well known in the community. Shortly after the death of John Hammon, Tom visited this state, apparently, among other reasons, for the purpose of looking after his interests in his brother's estate. It is impossible to escape the conclusion that Thomas Hammon knew of the fact of the concubinage, and knew why John Hammon had left the greater part of his estate to Georgiana, William J. and Wesley Owens. It also appears that, when the testamentary executor was ready to pay the special legacies, the remaining brothers and the sister of John Hammon, all of whom resided in the state of Tennessee, sent another brother, J. S. Hammon, also a resident of that state, to Shreveport, La., to collect for them the legacies left them by their brother, giving him a power of attorney, authorizing him to collect the legacies and to attend to their interests in this state. He came here for that purpose, read the last will and testament of John Hammon, saw that John Hammon had left the greater part of his estate, including the two plantations involved in this litigation, to Georgiana Owens and William J. and Wesley Owens, knew that Georgiana Owens was a negro, and that William J. and Wesley Owens were her children. Under the circumstances it is impossible not to reach the conclusion that J. S. Hammon, the agent of these legatees, knew why his brother had willed the greater part of his estate to Georgiana Owens and her two children, or, in other words, knew that John Hammon made this bequest because Georgiana Owens was his concubine and that her two children were his children. It is fair to presume that J. S. Hammon reported these facts to his principals. In fact, the knowledge so acquired by him was their knowledge. Our conclusion is that all of these legatees, including Thomas J. Hammon, knew why this bequest was made.

With the foregoing facts before them, the brothers and sister of John Hammon received the legacies left them, and permitted the residuary legatees, the Owenses, to be placed in possession of the residuum of the estate without making the slightest protest, and during the 13 years that intervened between that time and the time Georgiana and Wesley Owens sold the two plantations involved in this suit, to Sentell, not the least attempt was made by any of the plaintiffs herein to attack the bequest to the Owenses and recover the property bequeathed to them or any part of it. As to Sentell, when he examined the record with the end in view of purchasing the two plantations, if the title to the same proved to be good, and found that those who had a right to attack the will, or the bequest here attacked, if any ground for attack existed, had received the legacies left them, that the

residuary legatees had been sent into possession, and that after the lapse of 13 years no effort had been made to attack the will, or the bequest here attacked, he had a right to presume that no fact existed dehors the record that would justify an attack, and must be deemed to have been a purchaser in good faith.

Counsel for plaintiffs urge, however, that such a bequest as the one made to the Owenses, one of the legatees being the concubine of the testator, and the remaining two his illegitimate children, is contrary to prohibitory laws, enacted in furtherance of public order, and, this being the case, such a bequest can be given no force and effect by virtue of an estoppel. While the bequest mentioned was clearly susceptible of attack in the beginning, yet it does not follow that those who had the right to make the attack could not place themeselves in such a position as to be estopped from making it. In the Succession of Carter, 88 So. 788, 149 La. 189, to quote from the syllabus, it was said:

"There is no law of this state which precludes a person who is sui juris from waiving the obstacle of illegitimacy and concurring with his unfortunate brother in a judgment putting them in possession of the estate of their common parents. * * *"

See, also, Succession of Rufin, 79 So. 421, 143 La. 828.

[2] To the foregoing we may add that there is no law in this state that prohibits an heir, under the penalty of the nullity of his act, from consenting that one, who was the concubine of the testator at the time of the confection of his testament and at the time of his death, be placed in possession of a legacy left her by her paramour, consisting of immovable property. In such instance the concubine takes from the heir rather than from her paramour. Hence, as there is no law that prohibits an heir from consenting that an illegitimate child of the testator or that one who was his concubine be placed in possession of a legacy, not sanctioned by law, there is no reason why such heir cannot place himself in such position as to be estopped from attacking the legacy, where, as in this instance, the only part of the legacy attacked has passed into the hands of a third person.

We think that the plea of estoppel is well founded under article 1839 of the Civil Code, which provides:

"But if the person, who is really entitled to the quality assumed by the one with whom the contract is made, has contributed to the error by his neglect or by design, it will not vitiate the agreement. And in the case above stated, a payment to, or a compromise with one, whom the true heir suffered to remain in possession of the inheritance, and to act as heir, without notice, would be valid."

See, also, Succession of Derigny, 63 So. 56, 133 La. 381.

The foregoing article of the Code is as applicable to testamentary heirs as it is to legal heirs. In the case at bar, Sentell purchased the property from the testamentary heirs, in good faith, after the legal heirs had permitted the testamentary heirs to be placed in possession. The title acquired by him cannot be attacked by the legal heirs under these circumstances.

Since all that is in reality involved in this case is the real estate left the Owenses, consisting of the two plantations mentioned, sold to Sentell, the sustaining of the plea of estoppel, as to the right to recover that property, or its equivalent, disposes of the case.

The trial court did not pass on the plea of estoppel, sustained by us. It found that the bequest to Georgiana, Wesley, and William J. Owens was a conjoint legacy; that William J. and Wesley Owens were the acknowledged children of John Hammon; that, as Georgiana Owens was incapacitated to receive the legacy consisting of the immovable property involved in this litigation, and as the legacy to her and her children was a

conjoint one, the part of the legacy left to her passed, under the doctrine of accretion, to her two children; and the court held that, as William J. and Wesley Owens were the acknowledged children of John Hammon, the attack on the bequest to them amounted to nothing more than a demand to reduce that bequest to the disposable portion, and accordingly sustained the prescription of five years, pleaded by defendants, against said demand. Without expressing an opinion as to the correctness of the views entertained by the trial court, we may say that we have thought it proper to rest the decision on the plea of estoppel. However, both views lead to the same decree, to wit, the rejection of plaintiffs' demands. It will therefore be unnecessary to amend the judgment appealed from.

Before handing down this opinion, it should be said that two of the plaintiffs, to wit, William J. Hammon and W. J. Hammon, Jr., died pending this appeal. Their heirs, however, have been made parties to the appeal in their place.

For the reasons assigned, the judgment appealed from, rejecting the demands of plaintiffs, is affirmed, appellants to pay the costs.