LAISTD, J.
 

 Plaintiffs sue to recover of defendants and of their vendees a tract of land consisting of 200 acres, located in the parish of Union in this state.
 

 The ownership of this property is claimed by plaintiffs as the sole legitimate heirs of Jim Morris and of Cynthia Garr, deceased, who 'are alleged to have married as slaves during the late Civil War.
 

 Defendants, who are the children of Jim Morris and of Frances Beth or Betz, deny the validity of the slave marriage relied upon by plaintiffs, and aver that they are the - only and- lawful heirs of their father and mother, by virtue of a formal marriage contracted between them in Union parish August 17, 1886.
 

 Plaintiffs attack this marriage as a nullity, • and also assail the good faith of the contracting parties, on the grounds that each of them had ^ living and undivorced spouse at the time, and that each was well aware of that fact.
 

 The plaintiffs were decreed to be the owners of the property in dispute, and defendants, except J. J. Meyers, have appealed.
 

 In Succession of Blackburn, 154 La. 623, 98 So. 44, after reviewing our jurisprudence upon the subject, the court said:
 

 “We think the true solution and underlying basis for the recognition of a slave marriage is that there should have been a bona-fide intention of the parties to assume, with the consent of their masters, the relation of husbáñd' and wife, and that this intention should have'-been carried out by the living together as .such thereafter, in good faith, both before and subsequent to emancipation.”
 

 In Girod v. Lewis, 6 Mart. (O. S.) 559, it is declared that:
 

 “Emancipation gives to the slave his civil 'rights, and a contract of marriage, legal and valid by the consent of the master and moral assent of the slave, from the moment of freedom, although dormant during the slavery, pro- ' duces all the effects which result from such contract among free persons.!’ C. C. 1825, arts. 87, 174, 182.
 

 President Lincoln’s Emancipation Proclamation was issued in September, 1862, to take effect January 1, 1863. The Confederate ' Army, however, did not surrender until April 9, 1865.
 

 The presidential proclamation' of 1862 (12 Stat.- 1267)' freeing the slaves was a mere war measure and had no potential operation or force on the people of the Confederate
 
 *367
 
 States until they were conquered. Then, and not until then, did or could the slaves become free by force of said proclamation, unless living in subjugated territory. 25 R. C. L. p. 15, par. 15; 36 Cyc. p. 492.
 

 The evidence in the case shows that Jim Morris and Cynthia Garr were slaves, and were owned, respectively, by the Colvins and the Garrs, who resided during the Civil War near Vienna, which was then in the parish of Jackson, but is now in the parish of Lincoln.
 

 They were married on the Garr plantation about the year 1862 or 1863, with the consent of their respective owners. While the exact year is not shown by the evidence, it is made clear that this marriage took place before General Dee surrendered at Appomattox Courthouse in 1865. It does not appear from the record that hostility had been actually suppressed in that portion of the state in which the Colvins and Garrs lived, prior to the general surrender of the Confederate forces. The Thirteenth Amendment was not adopted until December 18, 1865.
 

 As the slave marriage of Jim Morris and Cynthia Garr occurred prior to the surrender, it wasl not affected by the Emancipation Proclamation of 1862. They were still slaves in the years 1862 and 1863.
 

 They lived together as husband and wife after the close of the Civil War and their manumission.
 

 From the moment of freedom, their marriage as slaves produced all the civil effects of a formal marriage contracted among free persons, and the plaintiffs, born of that union, became the legitimate offspring of their emancipated parents.
 

 About the year 1874, Jim Morris abandoned ■ his wife, Cynthia, and commenced to live in open concubinage with Frances Beth or Betz, later known as Frances Morris Thomas. At this date, Frances was the lawful wife of John Beth or Betz. They were then living separate and apart, but had not been legally divorced. John Beth or Betz was still alive on August 17, 1886, the date of the alleged formal marriage between John Morris and Frances Beth or Betz. At that time, John Beth or Betz was a convict in the state penitentiary at Baton Rouge. His death did not occur until October 13, 1887, when he was killed by the guards while he was attempting to escape from a convict camp. Cynthia Morris, the lawful wife of Jim Morris, was not divorced from him at the date of his marriage to Frances Beth or Betz in 1886, and lived until August 19, 1919. Jim Morris died in the year 1896.
 

 The evidence satisfies us that the formal marriage attempted by Jim Morris and Frances Beth or Betz was entered into without good faith upon the part of either of them, since the wife of the former and the husband of the latter were alive at the time and undivorced, as each of the contracting parties well knew.
 

 It is true that no civil effects can flow from such bigamous union, either as to Frances Beth'or Betz, or as to the issue of her illicit relation with Jim Morris. R. C. C. arts. 93, 113, 200, 203, 204.
 

 If the vendees of Frances Morris and of her children relied for the stability of their titles solely upon the validity of her marriage to Jim Morris, there would be an end to the case. But they do not so rely, and have tendered pleas of estoppel against the demands of plaintiffs for the recovery of the property. These pleas are based upon the alleged neglect of plaintiffs in suffering Frances Morris and her children to remain for years in possession of the inheritance now claimed by plaintiffs, and in permitting them to assume the qualities of the true surviving widow and of the true heirs of Jim Morris, in their transactions with defendant vendees, who are third persons and purchasers of this property, without notice of the adverse claims of plaintiffs except in the few in
 
 *369
 
 stances to be mentioned la ter. on in this opinion.
 

 If the vendees’ pleas of estoppel are maintained, their titles will be derived from plaintiffs, the true owners, and not from the concubine and bastard offspring of Jim Morris, deceased.
 

 AYe find no difference, 'in principle, between the pleas of estoppel tendered in this case, and the plea of estoppel relied upon by the purchaser in Hamrnon v. Sentell, 160 La. 589, 107 So. 437.
 

 In the Hamrnon Case, the concubine and illegitimate children of the testator, as his residuary legatees, were sent into possession of two plantations belonging to his estate, with knowledge on the part of the legal heirs, at the time, as to the status of the legatees.
 

 As special legatees, the legal heirs received their legacies under the will. After the lapse of 13 years, and after the acquisition of the plantations by Sentell, a third person, the legal heirs attacked as nullities the dispositions of the will in favor of the concubine and of her children, in an attempt to rescind the sale made to Sentell by the residuary legatees, and to recover the property.
 

 It was held in the Hamrnon Oase that the plea of estoppel made by Sentell, purchaser of the property, was well founded under article 1839 of the Civil Code, which provides:
 

 “But if the person, who is really entitled to the quality assumed by the one with whom the contract is made, has contributed to the error by his neglect or by design, it will not vitiate the agreement. And in the case above stated, a payment to, or a compromise with one, whom the true heir suffered to remain in possession of the inheritance, and to act as heir, without notice, would be valid.”
 

 This article, in substance, is to the effect that third persons dealing with the party assuming the quality of heir, without notice of adverse claim, will be protected, and their contracts will be maintained as valid if the true heir, by his neglect or by design,- suffers one who. is not heir to remain in possession of the inheritance and to act as heir.
 

 This is a species of statutory estoppel binding alike on legal and testamentary heirs, and is a fixed rule of property in this state. Hamrnon v. Sentell, supra.
 

 The essential elements of this estoppel are:
 

 (1) That one who is not heir should be suffered to remain in possession.
 

 (2) That the possessor should be suffered to assume the quality and act as heir.
 

 (3) That the third person dealing with the assumed heir should be without notice of the claim of the true heir.
 

 These elements, when combined, constitute such neglect on the part of the true heir as to bar his right of recovery against a third person, acting in good faith and without notice, upon the .apparent heirship of the possessor of the inheritance.
 

 The possession of the property in dispute by Frances Morris and her children, from the death of Jim Morris in 1896 until December 6, 1921, is admitted. Her status and that of her children were well known to plaintiffs, as shown by their allegations and by the evidence in the case.
 

 The defendants, as surviving widow and children of Jim Morris, sold to various vendees their respective interests in this property in 1920, 1921, and 1922, and these sales were duly recorded in the parish of Union. These were public acts in which Frances Morris and her children assumed the qualities of surviving spouse and of heirs of Jim Morris.
 

 December 6, 1921, Frances Morris, then the wife of George Thomas, and her children applied to the Fourth judicial district of Union parish to be recognized as surviving widow and heirs of decedent, and to be sent into possession of his estate. The property in dispute in this case is inventoried as belonging to the succession of Jim Morris. Miarch 25, 1922, judgment was rendered recognizing
 
 *371
 
 Frances Morris Thomas as the surviving spouse, and her children as the heirs of the deceased, and sending them into possession.
 

 This judgment is a public record evidencing upon its face that the ownership of the property in dispute was claimed by and was vested legally in Frances Morris Thomas and her children, as the surviving widow and heirs of the de cujus.
 

 There is no fraud patent upon the face of the record in the succession of Jim Morris to notify third persons that Jim Morris was not the first husband of Frances Morris Thomas, or that their marriage was bigamous, or that their children were illegitimate and incapable of acknowledgment and legitimation. On the contrary, Morris is alleged to be the first husband of his surviving spouse, and all of her children are averred to be the legitimate issue of that marriage, in the petition presented to the Fourth district court of Union parish, praying that the claimants be sent into possession of the estate.
 

 At the time, there also appeared upon the public records of Union parish a marriage license issued to Jim Morris and Miss Frances Beth, and a procés verbal reciting that the parties had been united in lawful wedlock August 17, 1886, by a minister of the gospel, and in the presence of the requisite number of witnesses.
 

 All of the property in dispute was acquired after the date of this marriage and, upon the face of the public records, belonged to the community of acquits and gains existing, apparently, between Jim Morris and Frances Beth or Betz.
 

 Plaintiffs do not pretend to have paid taxes or to have received any fruits or revenues from this property. Nor do plaintiffs show that they made any adverse claim to this property before the filing of the present suit, March 26, 1925, notwithstanding numerous recorded acts of sale made by Frances Morris Thomas and her children in the years 1920, 1921, and 1922, and notwithstanding the judgment of date March 25, 1922, recognizing Frances Morris Thomas and her children as the surviving widow and heirs of Jim Morris, and sending them formally into the possession of his estate.
 

 It may be that all of the defendants have not specially pleaded estoppel in this case. However, they have been permitted to introduce, without objection, evidence of a character sufficient to broaden the pleadings and to supply such plea.
 

 Defendants do not invoke articles 76, 77. 78, and 79 of the Civil Code as the basis of their plea of estoppel, which clearly comes within the provisions and purview of article 1839 of the Civil Code, which was applied as the law of the case in Hammon v. Sentell, 160 La. supra.
 

 This article does not, by any means, declare that the only instance in which the true heir will be estopped is the case of a purchase made by a third person, after judgment has been rendered, placing the assumed heir in possession. Article 1839’ deals expressly with contracts and agreements entered into by third persons with those in possession of an inheritance and assuming to act as the true heirs. The clear purpose of this article is to protect such covenants, when made in good faith by third persons, without notice of adverse claim on the part of the true heir, who, by neglect, has permitted others to possess his inheritance and to assume his quality as heir in making contracts and agreements affecting same.
 

 As illustrative of the character of such agreements and contracts as are contemplated by this article, it expressly mentions “a payment to or a compromise with one, whom the true heir suffered to remain in the possession of the inheritance, and to act as heir, without notice.”
 

 • If a payment to or compromise with the assumed heir by a third person acting in good
 
 *373
 
 faith is protected by article 1839 of the Code as valid, necessarily the contracts of sales made by Frances Morris Thomas and her children, and duly recorded in Union parish in the years 1920, 1921, and 1922, cannot be vitiated in the present suit under the facts of the case. These recorded deeds were notice to plaintiffs that these defendants had assumed the quality and had acted as the heirs of Jim Morris.
 

 Not only did plaintiffs permit the widow and children of Jim Morris to remain in possession of the land involved in this suit for 25 years, with full knowledge as to their legal status, but plaintiffs delayed 5 years after the first recordation of the numerous acts of sale made by these defendants to third persons, and for 3 years after the date of the judgment sending them into formal possession of the estate of Jim Morris, before plaintiffs attempted any action whatever to assert their adverse claims to this property by the present suit.
 

 It is true that error as-to the legal quality of the party with whom a contract is made will, as a general rule, render void the contract, if such quality is the principal cause of the agreement. C. C. art. 1838.
 

 But this is not the case “if the person, who is really entitled to the quality assumed by the one with whom the contract is made, has contributed to the error by his neglect or by design.” O. G. art. 1839.
 

 The defendants Frances Morris Thomas and her children are without right, title, or interest in or to the property in controversy, as she is the bigamous -wife of Jim Morris and as the children born of this illicit union are incapable of acknowledgment and legitimation. Her marriage to Jim Morris in 1886 was contracted by both parties in bad faith and produced no civil effects.
 

 It is clear, therefore, that third persons who have purchased an .interest in this property, or in the minerals underlying it, must depend for the defense of their titles entirely upon the validity of the pleas of estoppel tendered by them.
 

 It follows that any sale made by the defendants the children of Jim Morris to any codefendant during the pendency of the present suit is invalid, as the purchaser at the time was affected with notice of the adverse claims of ifiaintiffs, the true heirs of Jim Morris and Cynthia Garr Morris, deceased.
 

 There are only two such sales in the record:
 

 First. A sale of date January 15, 1926, made by the defendant Lizzie Bell Rachel to the defendant J. J. Meyers, of all of her assumed three-tenths interest in the property in dispute.
 

 Lizzie Bell Rachel is a child of Jim Morris and of Frances Beth Morris. In the sale to Meyers, she pretended to convey her individual interest of one-tenth; also the one-tenth interest each of Floyd Morris and of Cornelia Smedley, her illegitimate sisters, which she had purchased from them on January 7 and 9, 1922.
 

 As the adulterous children of Jim Morris, these defendants are incapable of acknowledgment and are barred from inheriting his estate. C. C. art. 920; Succession of Vance, 110 La. 764, 34 So. 767. In relation to each other, they cannot be considered as third persons in good faith and the plea of estoppel created by article 1839 of the Civil Code cannot be invoked by them against plaintiffs, the true heirs, who seek in a direct action against these defendants to recover this property. If the law were otherwise, bastards, adulterous, or incestuous could defeat the claims of the true heirs in all cases by a mere conveyance inter se of the respective interests claimed by them in an inheritance.
 

 Lizzie Bell Rachel was therefore without interest, heritable or acquired, to be conveyed to J. J. Meyers, who has, not appealed', and
 
 *375
 
 is out of the case. The judgment of the lower court is final as to him and, in our opinion, is correct as to the appellants Lizzie Bell Rachel and her illegitimate sisters, in that it awarded to plaintiffs, the true heirs, the interests claimed by these defendants in the property in controversy.
 

 Second. A siale of date November 9, 1925, from Leon Williams to Frost Lumber Industries, Inc., of “all of his right, title and interest” in the oil, gas, and other minerals in and under the land involved in this suit.
 

 It appears that Ida Morris, a child of Jim Morris and of Frances Beth Morris, was the wife of Leon Williams, who became her heir, due to the fact that she died within 3 days after the birth of her only child, which survived its mother about 20 days.
 

 This purchase was made by the Frost -Lumber Industries, Inc., a defendant in this suit, after its institution, and with notice of the adverse claim of plaintiffs, as the true heirs of Jim Morris and of Cynthia Garr, deceased.
 

 The plea of estoppel herein tendered is therefore without avail as to this particular purchase and plaintiffs are entitled to recover this interest.
 

 ' While Ida Morris is not mentioned among the 10 heirs of Jim Morris who were sent into possession of his estate, she is admitted by stipulations of counsel to have been a child of Jim Morris and of Frances Beth or Betz. This fact becomes important in calculating the interests to be recovered by plaintiffs in the present suit.
 

 As far as defendants who are purchasers without notice are concerned, the property in dispute is to be regarded, as it appeared upon the face of .the public records, as a community existing between Jim Morris and Frances Beth Morris, who disposed of her apparent half interest in the property to the Frost Lumber Industries, Inc., by act of sale of date December 6,1921.
 

 Since the estate of Jim Morris consisted of an apparent undivided half interest in the community property, each of his 11 children was entitled, prima facie, to an •undivided one twenty-second interest therein.
 

 The property involved in this suit consists of S. % of N. E. % and N. % of S. E. % of section 6, Tp. 20 N., R. 4 E., held by Jim Morris under the United States patent issued March 1, 1892, and of S. E. % of S. W. % of section 30, Tp. 21 N., R. 4 E., purchased by-Morris from Mitchell Cooper January 3, 1887. Both of these tracts are located in the parish of Union in this state.
 

 The interests which plaintiffs may recover consist, therefore, of the interests claimed in the estate of Jim Morris by Lizzie Bell Rachel, and her vendors, Floyd Morris and Cornelia Smedley, and the interest of Ida Morris, purchased by Frost Lumber Industries, Inc., from her husband, Leon Williams, as her heir. These interests combined constitute an undivided four-elevenths interest of the undivided one-half of the property and minerals belonging to the estate of Jim Morris, deceased.
 

 It is ordered, therefore, that the judgment appealed from be amended so as to reject the demands of plaintiffs, except as to the four-elevenths interest of the undivided one-half of the property belonging to the estate of Jim Morris, and claimed heretofore by Lizzie Bell Rachel, Floyd Morris, Cornelia Smedley, and Ida Morris, and later by her husband, Leon Williams, as her heir, and by his vendee, Frost Lumber Industries, Inc.
 

 It is now ordered that said judgment, as amended, be affirmed and that plaintiffs appellees pay the costs of appeal and all costs of the lower court, except those incurred by the parties cast herein, which are to be paid by said parties.
 

 O’NIEI/L, C. J., takes no part, being absent during the argument.