183 So. 201

**TYSON** et al. v. **SPEARMAN** et al.

No. 34837.

June 27, 1938.

Rehearing Denied Aug. 5, 1938.

Wilkinson, Lewis & Wilkinson, of Shreveport, and O'Connor & O'Connor, of New Orleans, for appellants N. S. and W. R. Spearman.

Sholars & Gunby, of Monroe, for appellant United Gas Public Service Co.

Cook, Cook & Egan and J. P. Wallace, all of Shreveport, for appellees.

FOURNET, Justice.

This is a petitory action to recover an undivided half interest in approximately 169½ acres of land situated in what is known as the Rodessa Oil Field, in Caddo Parish, Louisiana, the ownership of which is claimed by the defendants, N. S. Spearman and W. R. Spearman, coupled with an action to cancel a mineral lease affecting the said property in favor of and held by defendant, United Gas Public Service Company, and for an accounting by said lessee for the value of the oil, gas and other minerals produced therefrom.

We shall refrain from narrating each pleading filed and the status or disposition of the same because the record in this case is very voluminous, comprising seven volumes, the first of which contains the pleadings only, but we shall state them in substance and only insofar as they involve the remaining issues and are necessary for their disposal. For a complete history of the facts from which this case evolves, see Succession of Louisa Tyson, 186 La. 516, 172 So. 772.

The plaintiffs are some of the irregular heirs of Louisa Tyson and claim title to an interest in the property in accordance with the judgment recognizing them as such heirs in the matter of the Succession of Louisa Tyson, supra.

The defendants claim title to the entire property by deeds from five of Louisa's ten children, or their heirs, and by prescription acquirendi causa of ten and thirty years, and also by estoppel under the provisions of Article 1839 of the Revised Civil Code.

Louisa Tyson married Richard Gibson on August 7th, 1870. Subsequent thereto and during the community of acquets and gains that existed between them, Richard Gibson acquired on November 7, 1879, the Southwest quarter of Section 15, Township 23, North, Range 16, and on the 3d of March, 1885, an adjoining tract, being the North 51½ acres of Section 22, Township 23, North, Range 16. The two tracts comprise 211½ acres and are situated in what is now known as the Rodessa Oil Field.

No children were born to Louisa subsequent to her marriage to Richard Gibson. Prior thereto, however, ten illegitimate children were born to her, all of whom were duly acknowledged by her. The first five were born prior to the Civil War of an unknown father and, according to the custom of the times, these children assumed the surname of their master, as did Louisa, Tyson. Beginning about the year 1860, Richard Gibson began to visit Louisa and by him she gave birth to the last five children who assumed the surname of Gibson.

Richard died about the year 1897 without any legitimate heirs but left as an irregular heir his surviving widow, Louisa Tyson, who died on November 9, 1901, without leaving any legitimate heirs and without having invoked the necessary proceedings to be recognized as an irregular heir of her husband and placed in possession of his estate, but leaving seven children who survived her as her irregular heirs. See Succession of Tyson, supra.

On June 28, 1909, the defendants, N. S. Spearman and W. R. Spearman, acquired their first interest in the property by deed of an undivided one-fifth interest therein by Hannah Gibson. Subsequently they acquired similar interests: (1) By deeds from the heirs of Narcisse Gibson dated February 7, 1912 and February 8, 1912; (2) by deeds from the heirs of Loudella Gibson dated March 31, 1917, July 10, 1919, and July 11, 1919; (3) by deeds from the widow and heirs of Gus Gibson dated July 8, 1919, and August 6, 1919; and (4) by deed from Chesley Gibson dated August 12, 1919.

On the same date that Chesley Gibson executed a deed for his undivided interest in the property, the defendants, N. S. Spearman and W. R. Spearman, transferred to him the northeast 42 acres of the large tract, leaving them 169½ acres, which is the property in controversy here.

Subsequently, the Spearmans, from time to time, executed several mineral leases which affected this property, and on the 11th of October, 1930, executed a deed in favor of W. B. Spearman (son of defendant W. R. Spearman) who, on February 14, 1933, represented by his agent, defendant N. S. Spearman, by virtue of his power of attorney, executed a lease to the defendant, United Gas Public Service Company, and later, on January 2, 1935, he re-transferred the property to the defendants.

This suit was originally filed by Robert Tyson and the heirs of Richard, Jeff and Catherine Tyson, who thereafter instituted

the proceedings in the Succession of Louisa Tyson, supra, to which the defendants here became parties by their interventions. In that proceeding some of the plaintiffs were barred by prescription liberandi causa of thirty years under Article 1030 of the Revised Civil Code, and the remaining plaintiffs who, because of the suspension of such prescription during their minority, were not barred and their rights to claim the estate of Louisa Gibson, including the transmission of Louisa's right to claim the succession of her husband, Richard, were recognized and fixed by the judgment of the court. Subsequent to our decree affirming the decision of the lower court in that matter, the proceedings in this case were amended to conform with our holding and those against whom the prescription was maintained, were eliminated as parties plaintiffs.

Plaintiffs pleaded the judgment in the Succession of Tyson, supra, as res adjudicata to all of defendants' rights under their pleadings in this case. This plea was sustained as to all defendants' pleadings and claims except their plea of prescription acquirendi causa of ten and thirty years and plea of estoppel under Article 1839 of the Revised Civil Code.

On the merits, plaintiffs rested their case, without offering any evidence except in rebuttal, upon the admissions of the defendants in their pleadings. Whereupon defendants offered testimony in support of their pleas of prescription and of estoppel, which were overruled by the trial judge and judgment was rendered in favor of plaintiffs as prayed for.

The defendants have appealed, and the plaintiffs have answered the appeal asking that the action of the lower court, overruling their plea of res adjudicata, be annulled.

By virtue of the judgment in the Succession of Tyson, supra, plaintiffs are entitled to an undivided one-half interest in the property in controversy. Likewise, defendants, N. S. Spearman and W. R. Spearman, as transferrees of the other irregular heirs whose rights were not barred by prescription of thirty years due to the suspension thereof during their minority and whose rights were recognized and fixed by that judgment, are entitled to the remaining half of the property. They now claim to have acquired the other half by prescription acquirendi causa of ten and thirty years, or by estoppel under Article 1839.

We shall first consider the defendants', N. S. Spearman and W. R. Spearman, pleas of prescription acquirendi causa of ten and thirty years.

It is their contention that they acquired the property in controversy from Louisa's children (or their heirs), whose surname was Gibson, by deed translative of title, in good faith, believing them to be legitimate issue of Louisa's marriage to Richard Gibson and that Louisa's other children, whose surname was Tyson, were adulterous bastards and consequently without right or interest in the property; and that the property had been in possession of the Gibson children, to the exclusion of the Tyson children, immediately fol-

lowing the death of Louisa Gibson and continued until defendants' acquisition of the property when they took possession, which was continued by them until the date of the filing of this suit—a period of nearly 34 years—and therefore they have acquired title to the property by prescription acquirendi causa of ten and thirty years under the provisions of the Revised Civil Code, Articles 3478, 3499 and 3548, and by estoppel under Article 1839.

On the other hand, the plaintiffs' position is that the prescription of thirty years does not apply to them in this case because such prescription was suspended during their minority; that the possession of the defendants and of their authors in title has not been continuous and uninterrupted; that the possession by Gus and Chesley Gibson was precarious and not such as would give them the right to acquire the property by prescription and, further, that they acknowledged the ownership of the other heirs, including plaintiffs. Plaintiffs further contend that the defendants can not prescribe against them under the provisions of Article 3478 of the Revised Civil Code because they acquired the property in bad faith and are without a title translative of ownership, and besides, they did not have the uninterrupted possession of the property for a period of ten years.

The prescription of thirty years is based upon articles 3548 and 3499 of the Revised Civil Code which provide that: "all actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years," (3548) and "the ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith" (3499). The Civil Code further provides that "minors * * * can not be prescribed against, except in the cases provided by law" (3522), and in Article 3554, this provision, in substance, is repeated. See Tyler v. Lewis, 143 La. 229, 78 So. 477; Succession of Tyson, supra.

■ We found as a fact in the Succession of Tyson, supra, that, due to the suspension during their minority of the prescriptive period, thirty years had not elapsed at the time plaintiffs instituted that proceeding, which was filed subsequent to the case at bar. We, therefore, conclude that the trial judge properly overruled the prescription of thirty years acquirendi causa.

The prescription acquirendi causa of ten years is based on Article 3478 of the Revised Civil Code, as amended by Act No. 161 of 1920 and Act No. 64 of 1924, which provides that *"he who acquires an immovable in good faith and by just title prescribes for it in ten years.* This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor; provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party." (Italics ours.)

"The good faith, spoken of in the preceding article, is defined in the chapter

which treats of possession," (Art. 3480), and in that chapter "the possessor in good faith" is defined to be "he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another." (Art. 3451).

A just title is defined as "* * * a legal and transferable title of ownership in the possessor * * *" (Art. 3483). And to acquire by a just title the possessor must honestly believe that he acquired the same from the real owner, (Art. 3484). But "to enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents: 1. That the possessor shall have held the thing in fact and in right, as owner * * *. 2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal * * *." (Art. 3487). (Italics ours.)

The district judge found as a fact, in his written reasons for judgment, that the defendants knew Louisa was formerly a slave of their grandfather; that she had ten children whom she raised and publicly acknowledged as her own and were individually and intimately known by them; and that they knew that the first five were known by the name of Tyson and the last five by the name of Gibson. It was his opinion that the defendants, from the very beginning when they acquired a one-fifth interest from

Hannah Gibson, were in legal bad faith because the real consideration for the interest was a debt due by Tom Jackson, Hannah's husband, instead of the cash consideration recited in the deed and therefore was an absolute nullity and could not support that good faith which must exist in the minds of the purchasers at the time of their acquisition. He was also of the opinion that the transaction between the defendants and Chesley Gibson on the 12th day of August, 1919, when they acquired Chesley's interest and on the same date and before the same notary, they conveyed to him 42 acres of the 211½ acre tract, was in fact a partition, which is not translative of title but merely declaratory and can not support a plea of prescription of ten years acquirendi causa.

Plaintiffs contend that defendants can not prescribe against their interest for the additional reasons: That the deed from Roxy Gilliam McLemore to N. S. and W. R. Spearman, dated July 10, 1919, showed that the interest thereby conveyed was in Section 20, instead of 23 and therefore does not convey title to the property in litigation; that in the several deeds by which the defendants claim to have purchased the property, it is declared that the intention of each vendor was to sell only his respective interest in the property as heir of Richard Gibson; that there was registered in the conveyance office an affidavit by defendant N. S. Spearman at the request of his co-defendant, United Gas Public Service Company, at the time when it took a lease

on this property in 1933, showing that one of the heirs, Richard Spearman, was about forty years of age at that time, and if that information be correct, then in 1912, when the defendants purchased this heir's interest in the land, he was only 19 years of age, and consequently, they were not in good faith, having purchased from a minor without the authority of the court and the intervention of a tutor; and that when the defendants acquired Gus Gibson's interest in 1919, under the law then applicable (Act No. 245 of 1918), a minor's interest could only be purchased at private sale by co-owners and that since the heirs of Richard and Louisa Gibson were irregular heirs and therefore without seizin or title to the property, the Spearmans were not co-owners with the minors and could not purchase from the minors at private sale. They also point out that the defendants acquired the property left by Gus Gibson from Lucinda Gibson, as natural tutrix of his minor children when in fact she was not qualified as the tutrix of one of her children, Gus Gibson, and therefore, under the decisions of this Court, particularly the case of Blunson v. Brocato, La.App., 172 So. 180, insofar as that minor's interest is concerned, they are without title.

The evidence conclusively supports the finding of facts by the trial judge with reference to the defendants' knowledge of Louisa's status and that of her children. The record further shows that Gus Gibson and Chesley Gibson continued in possession of and cultivated portions of the property in controversy after Louisa's death, which possession had begun prior to the deaths of Louisa and Richard Gibson, with their permission and consent. Under the express provisions of Article 3489 such a possessor is presumed to continue under the same title, unless there be proof to the contrary. The defendants offered evidence to show that the possession of Chesley and Gus was to the exclusion of the Tysons and for the benefit of Louisa's five children (or their heirs) whose surname was Gibson. This, in our opinion, does not change the status of their precarious possession. Moreover, the testimony on that phase of the case is not satisfactory or sufficient to carry the burden which was on defendants to rebut the presumption. This was the condition of the affairs of this estate when defendants acquired their first interest in June of 1909 from Hannah Gibson, which was continued without change until August 12th, 1919, when they and Chesley Gibson partitioned the property, and therefore could not prescribe plaintiffs' interest in the property under these facts.

Defendants made an effort to prove by their own testimony and that of Chesley Gibson's widow, whose interest in the outcome of this suit is the same as theirs, that after acquiring their first interest, they were paid rent by Chesley Gibson for that portion of the property, which he farmed in accordance with their ownership at the time the crop was made. On that subject matter we deem it unnecessary to narrate or analyze defendants' testimony, which was very vague and indefinite, and when considered together with the interest they had in the matter, and the further fact that

their testimony has been contradicted and impeached, renders the same unworthy of consideration and totally lacking in proof necessary to establish that fact.

The next question for our consideration is whether or not the transaction of August 12th, 1919, between the defendants and Chesley Gibson is in fact a partition and not such a title as would support a plea of prescription of ten years acquirendi causa as was held by our learned brother below.

As stated in the case of Tippett v. Jett, 3 Rob. 313, "* * * whatever may be the form of the act, it is well settled, that every first settlement between heirs or partners by which a state of indivision is terminated, is, in substance, a partition;" and, as expressed in the syllabus of the case of Westover v. Aime, 11 Mart., O.S., 443, "if heirs in dividing the property of their ancestor, held in common, pass an act of sale to each other, it will be regarded not as a sale but as a partition." See, also, Corpus Juris, Volume 47, p. 267.

"An act of partition cannot support a plea of prescription of ten years, acquirendi causa, because such an act does not purport to transfer the title to the property, but is merely declaratory of the fact that the title is vested in the parties to the transaction." Pearl Smith Tillery v. Minnie Tyson Fuller et al., and five other cases, La.Sup., 182 So. 683, decided May 30, 1938. In that case we cited as authority for this holding the following: Kernan v. Baham, 45 La.Ann. 799, 13 So. 155; People's Bank of New Orleans v. David, 49 La.Ann. 136, 140, 21 So. 174; Pearce v. Ford, 124 La. 851, 50 So. 771.

In the latter case above referred to, this Court said (page 772):

"The main reliance of the defendants is on the prescription of 10 years, based on the partition which they made with their coheirs; the contention being that said partition was not a partition, but a sale. But, as already stated, it is manifestly a partition, and, of course, a partition, being merely declaratory, and not translative, of ownership, cannot serve as a basis for prescription."

See, also, Ramsey v. Beck, 151 La. 190, 91 So. 674.

Counsel for defendants argued in brief and orally that those cases are authority insofar as they affect coheirs and succession property and do not apply to ordinary co-proprietors. In support of their contention they rely on excerpts quoted from several French commentators and some common-law authorities.

Authorities of other jurisdictions are persuasive but can not prevail over the settled jurisprudence of this Court. But a review of the authorities cited shows that they do not, in fact, support defendants' contention, as may be seen by a mere reading of their quotation from Corpus Juris, Volume 47, section 36, pages 280, 281, which they characterize in their brief as "the general rule prevailing in the United States," as follows:

*"Partition by act of the parties operates only to sever the unity of possession. It does not create or confer on the parties thereto any new, different, or additional title,* or enlarge or diminish the estate; and

the fact that deeds exchanged between co-tenants in effecting the partition contain covenants of general warranty does not affect the operation of this rule. *Each party has precisely the same title which he had before the partition* and neither co-tenant derives title or interest of his coten-ants, the undivided interest which he held in the whole tract being by the partition severed from the interests of his cotenants and concentrated in the parcel set apart to him, and their interests being excluded therefrom." (Italics ours.)

Having reached this conclusion, we are of the opinion that the defendants' title un-der which they possess can not support their plea of prescription of ten years acquirendi causa.

Moreover, the defendants have failed to establish their possession of the property for a period of ten years as required by law. The record conclusively shows that the de-fendants took actual possession of the prop-erty some time during the year of 1926 when they commenced to clear a portion of the property and afterward built a house there-on. The house was occupied for short pe-riods of time by different parties and be-ginning about the late fall of 1927, a Mr. Eggleston moved into the house and culti-vated the property commencing with the year 1927 and continuing for a period of six years. Thereafter the property was in the possession of a colored tenant by the name of Gazzy Jackson.

The defendants made a desperate effort to prove that the land was cleared in the sum-mer of 1925, which would have been a few weeks more than ten years before the in-stitution of this suit (September 5th, 1935), and to tack on to this possession the posses-sion of Lucinda Gibson, widow of Gus Gib-son and their children, and also the posses-sion of Chesley Gibson and that of his wid-ow, Emmeline, of two small parcels of the land located immediately south and west of the forty-two acre tract of land Chesley acquired in the partition of August, 1919. They also tried to establish that they sold timber from the place beginning in the year 1919 up to the time they sold all the mer-chantable timber to Wright Brothers in 1927; that one Sandy Gibson farmed a small portion of the property in the year 1920; and that one Monroe Ashley also farmed a small portion of the property in 1922 and harvested hay in that year and the following year.

The evidence on this subject matter is very voluminous, consisting of a whole volume of documents and exhibits and the testimony of some seventy-six witnesses, 60 for the defendants and 16 for the plaintiffs in rebuttal. We shall therefore not under-take to analyze the testimony of the many witnesses here, as it would serve no good purpose. Suffice it to say, the evidence of-fered by the defendants as a whole did not impress us favorably. The testimony of their several witnesses, besides being vague and indefinite on matters that are important and pertinent to the issues in this case, is conflicting and many of them have been im-peached either by their own testimony previ-ously given in the cases of Elzey Jackson v. Spearman, 188 La. 535, 177 So. 658, or in the Succession of Tyson, supra, or have otherwise made their testimony unworthy

of belief. In short, defendants have failed to establish possession of the property prior to the summer of 1926.

We therefore conclude that the trial judge properly overruled the plea of prescription, acquirendi causa, of ten years.

Article 1839, upon which defendants' plea of estoppel is based, reads as follows:

"But if the person, who is really entitled to the quality assumed by the one with whom the contract is made, has contributed to the error by his neglect or design, it will not vitiate the agreement. And in the case above cited, a payment to, or a compromise with one, whom the true heir suffered to remain in possession of the inheritance, and to act as heir, without notice, would be valid."

The questions that arise then are: what contribution, either by neglect or design, have plaintiffs made to the defendants' error in this case of which they were without notice or knowledge, and is an irregular heir a true heir within the meaning and contemplation of the codal article?

In disposing of defendants' plea of estoppel, the trial judge gave as his reasons for judgment the following:

"The plaintiffs or their ancestors in title, could not be said to be the true heirs who suffered others to remain in possession who assumed the quality of true heirs. Those in possession and the plaintiffs, or their ancestors in title, were upon equal footing. All had the right to sue to be recognized as heirs and nothing more; and each was equally entitled to possession. The plaintiffs, or their ancestors in title, are not therefore entitled to the quality assumed by those in possession with whom the contract was made by the defendants. The estoppel created by article 1839 of the Civil Code cannot be construed to apply to irregular heirs out of possession who sue for recognition of the right to inherit within the prescriptive period provided by law.

"Upon the death of Louisa Gibson her estate did not pass to plaintiffs. Her death merely caused to exist in plaintiffs, or their ancestors in title, a right of action to be recognized as her heirs. The defendants, or their ancestors in title, possessed nothing which the plaintiffs, or their ancestors in title, could lawfully possess until the decision was rendered in the succession proceeding. In that proceeding it was held that the action for recognition was timely brought by plaintiffs. It therefore cannot be reasonably argued that if their rights were exercised within the time prescribed by law that they are estopped by failure to assert their rights at some earlier time.

"One cannot be estopped for failure to prosecute a cause of action by a period less than that by which the action is prescribed. Davis v. Young, 36 La.Ann. 374; Vandry v. New Orleans Cotton Exchange, 2 McGloin 154; Reed v. Eureka Homestead Society, La.App., 143 So. 891; First National Bank v. Guynes, 11 La.App. 323, 123 So. 461.

"However, if it was the duty of the plaintiffs, or their authors in title, to prosecute the only right which vested in them, that is, to be recognized as entitled to be placed on an equal footing with those who had assumed the quality of heir, it is our opinion that

the pleas of estoppel here presented should have been filed in the proceeding in which that right was actually exercised; that is, in the Succession of Richard and Louisa Gibson."

The defendants, N. S. Spearman and W. R. Spearman, contend that the district court should have sustained their plea of estoppel in view of the holding of this Court in the case of Marshall v. Smedley, 166 La. 364, 369, 117 So. 323, and Hammon v. Sentell, 160 La. 589, 107 So. 437, and confined their argument principally to an attack upon the district judge's reasons for judgment.

In the case of Hammon v. Sentell, supra, the de cujus who died in 1901 left as his sole and only heirs at law four brothers and a sister, to each of whom he bequeathed a cash legacy, and the remainder of his estate, consisting principally of two plantations, he left to his concubine and his two illegitimate children by her. The special legacies were paid in due course by the testamentary executor and the residuary legatees were sent into possession of the remainder of the estate. Subsequently, one of the residuary legatees died and his mother and brother were recognized as his heirs and sent into possession of his estate. They remained in possession of the two plantations until they sold the same in 1916 for a consideration of $15,000 to John N. Sentell who, four years later, sold a part of the property to Mrs. Cecelia L. Ellerbe for a consideration of $12,174.38. On March 29, 1923, decedent's sister and brothers, alleging that decedent's legacies to his concubine and his children by her were prohibited by law and illegal, brought suit

against Sentell to be recognized as the owners of the said property, except the part sold by him to Mrs. Ellerbe, for which they sued to recover the amount he received therefor; and also for the value of the rents and revenues during his possession of the property. The Court held, as expressed in the syllabus, that *"under Civ.Code, art. 1839, heirs accepting legacies under will held estopped from attacking possession of immovable property left to one whom they must have known was his concubine, and her sons, * * * after property had passed into hands of third persons."* (Italics ours.)

In the case of Marshall v. Smedley, supra, plaintiffs, who were the legitimate heirs of Jim Morris and Cynthia Garr, sued to recover 200 acres of land in the possession of defendants who had acquired the same from Frances Beth, later known as Frances Morris Thomas, and the issue of her marriage to Jim Morris, on the ground that Frances Beth's marriage to their ancestor, Jim Morris, was bigamous because at the time of their said marriage each had a living spouse from whom they were not divorced. This Court held that plaintiffs, having permitted Frances Beth and her children to remain on the property from the death of Jim Morris in 1896 until December 5, 1921, when they were sent into possession of the property as his surviving widow and heirs by judgment of court, and there being no fraud patent on the face of the record in the succession proceedings of Jim Morris which might serve as a notice to third persons that Jim Morris was not the first husband of Frances Beth, or that

their marriage was bigamous, or that their children were illegitimate or incapable of acknowledgment and legitimation, were estopped under the provisions of Article 1839 of the Revised Civil Code from acquiring title to the property from defendants (third parties) who acquired the same in good faith and without notice.

In the instant case, in each of the defendants' deeds under which they claim to have acquired the property in controversy is contained a clause signifying the intention of the vendor to sell his or her interest in the property as heir of Richard Gibson, and while it is true that Richard was married to Louisa in August of 1870 and that the property was acquired subsequent thereto and during the existence of the community of acquets and gains that existed between them, nevertheless the defendants knew that Louisa, who was their grandfather's slave, had ten illegitimate children at the time of her said marriage, all of whom she raised and acknowledged as her own, and with whom they were well and intimately acquainted. The fact that they (defendants) were in error in their belief that Louisa's children, whose surname was Tyson, were adulterous bastards, and therefore without interest in the property, and that Louisa's children, whose surname was Gibson, were her legitimate children or at least her legal heirs, was not contributed to by the Tyson children by neglect or by design but was an error on their part with full and complete knowledge of all the facts.

But counsel for the defendant, the United Gas Public Service Company, contend that it acquired the lease on the property from the record owner on the faith of the public records, and the plaintiffs having knowingly allowed the Gibson children to remain in possession of the estate of Louisa Gibson as owners and to sell the same as owners to N. S. Spearman and W. R. Spearman, that they are estopped under the provisions of Article 1839, and en pais from contesting its rights as lessee under its contract of lease.

"It is the established jurisprudence of this state that the lessee in the usual oil and mineral lease merely obtains a personal right and not a real right in the property" (Marchand v. Gulf Refining Co. of Louisiana, 187 La. 1002, 175 So. 647, 649. See, also, Sabine Lumber Co. v. Broderick, 5 Cir., 88 F.2d 586; Posey v. Fargo, 187 La. 122, 174 So. 175), and his possession being for another (his lessor) does not thereby acquire rights for himself. On the contrary, such rights as the lessee may have acquired by virtue of his possession inures to the benefit of his lessor.

The fallacy of defendants' contention lies in the fact that they had the information on the face of the deeds that their ancestors in title acquired from Louisa's children (or their heirs), whose surname was Gibson, in their capacity as heirs of Richard Gibson, for each deed contained the stipulation that it was the intention of the vendor to sell, as an heir of Richard Gibson, his or her interest in the land belonging to their said ancestor at the time of his death. There is nothing in the record to show that they relied on the possession of the Gibson children to the exclu-

sion of the Tyson children when acquiring said property. But the record does show that the defendant lessee obtained an abstract of title and, at its request, was given a written opinion on February 23, 1933 by its attorneys, who with respect thereto advised it that the record title was defective in that *"the authors in title of the present owner of the land seem to have acquired from a number of persons claiming to be the heirs of Richard Gibson, former owner, by several deeds, * * *"* and advised their client as follows: "You should furnish us with *reliable information,* beginning with November 17, 1879, as to marital history of Richard Gibson * * *, and the heirs left by him and his wife." (Italics ours.) But instead of obtaining the character of information requested by its attorneys, it accepted the affidavit of its lessor's agent, defendant N. S. Spearman, who in fact was a co-owner of the property; besides, the affidavit contained only a general statement that Richard and Louisa were married but once and then to each other and stated that "the following named were their heirs" etc., without giving in detail the facts on which he based his conclusion. It therefore follows that the defendant did not act upon the faith of the record because, as shown by the opinion of its attorney, it found the record title defective; nor was it mislead by any of the plaintiffs' acts but, on the contrary, was mislead by its co-defendant, N. S. Spearman, who, without declaring on what facts he based his opinion, stated who the heirs of Richard and Louisa Gibson were and by its own failure in obtaining more definite and reliable information.

■ This Court said, in the case of Maxwell v. W. B. Thompson & Co., 175 La. 252, 143 So. 230, 233, that *"notice,* in its accepted legal sense, *means such information on the part of the person charged with notice as would put a prudent person on inquiry to ascertain the true or actual facts,"* and in the case of National Park Bank v. Concordia Land & Timber Company, 159 La. 86, 105 So. 234, 239, that *"notice of facts which ought to excite inquiry, and which, if pursued, would lead to knowledge of other facts operates as notice thereof."* (Italics ours.)

It is stated in Ruling Case Law, Volume 20, under the title Notice, Section 7, that:

*"Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. * * * Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge."* (Italics ours.)

We therefore conclude that our learned brother below properly overruled defendant's plea of estoppel under the provisions of Article 1839 and en pais.

For the reasons assigned, the judgment of the lower court is affirmed at appellants' cost.

O'NIELL, C. J., concurs in the decree, but not in the opinion "that the lessee in

the usual oil and mineral lease merely obtains a personal right and not a real right in the property."