## No. 445.

### JULES VAUDRY *v.* THE N. O. COTTON EXCHANGE.

1.  The rights of stockholders spring from the contract of incorporation; certificates of stock do not create, or directly preserve such rights, they are mere formal evidences thereof.
2.  Where a stockholder, deprived unlawfully of his stock, or shares, in a corporation, sues that corporation for the stock or its value, neither the prescriptions of three, five nor ten years apply.
3.  A member, or shareholder, in any company cannot be "dropped from the roll," except in the cases and manner provided in the charter.   Any "dropping from the roll," except as thus provided, is null and void, and in nowise affects the rights of the stockholder.
4,  Where, in the organization of the New Orleans Cotton Exchange, provision was made/for stock which might be held and owned by one not enjoying the right of admission to the Exchange, or privileges of the floor ; and it was provided, also, that stockholders, by paying certain dues, should enjoy such privileges,— *held*, that failure to pay such dues, while it may affect such particular privileges, cannot affect the rights of the members as mere stockholders.
5.  In the organization of said New Orleans Cotton Exchange, those who paid the original initiation fee of fifty dollars became full shareholders ; and their rights were not taken away, nor their obligation added to, by the subsequent changes effected in the charter.
6.  /Estoppel is a defence which must be specially pleaded.
7.  The plea of estoppel is not established by merely showing a delay in the enforcement of rights, too short for prescription.
8.  Stockholders may rely upon the honesty of their associates, and of the officers of the corporation, that the fundamental laws will be observed ; therefore, their rights are not to be prejudiced, as by estoppel, by reason alone of mere failure to inquire into, or interfere in its affairs.

9.  To establish estoppel by acquiescence, it must be shown, affirmatively, that the party affected had knowledge of the facts.

10.  Where a party has been unlawfully deprived of shares of stock in any corporation, he can recover, by way of damages, the full value of such stock.

*Appeal from Civil District Court, Division C. Monroe, J.*

*Chas. S. Rice* for plaintiff and appellant.

*Bayne & Denegre* for defendant and appellee.

McGLOIN, J.—In 1871, certain parties, plaintiff among them, formed an association, designated as the " New Orleans Cotton Exchange." By the constitution, an initiation fee of fifty dollars was to be paid: no other provisions being made for other exactions. This initiation fee plaintiff duly paid.

Later in the same year, these parties appeared before a notary and executed a formal charter, by notarial act; by which instrument the association was formed into a joint stock company with a capital stock of $10,000, in two hundred shares of fifty dollars each. Jules Vaudry was a signer, he had paid his fifty dollars; hence, was a stockholder from that date.

It matters not that no certificates of stock were ever issued under this charter; for rights of this character spring from the contract; and the certificates are mere formal evidences of those rights. Morawetz on Private Corporations, § 258.

In 1872, there were amendments, whereby the initiation fee was fixed at one hundred dollars; but it is not contended that this provision affected plaintiff, or was intended to have a retroactive effect upon any who were already members.

In 1873, came further amendments, whereby the capital stock was fixed at one hundred thousand dollars, in one thousand shares of one hundred dollars each. One article of these amendments expressly declared members who had already paid the " regular initiation fee," " entitled to receive one share of the capital stock in return therefor."

If, in the meantime, Vaudry had not lost or surrendered his membership, his share of fifty dollars became one of one hun-

dred; **and,** for the reasons already stated, this advantage came to him, independent of the taking of any certificate.

During 1876, other amendments were adopted in which it was provided that, for the future, the initiation fees received should enure to the benefit of the association, and no share of stock should be given for them; but it was stipulated, again, that those who had already paid an initiation fee were still entitled to a share of stock by virtue thereof.

In 1880, Article III of the charter was amended, and the capital of one hundred thousand dollars was made to consist of only five hundred shares, instead of one thousand; the new shares being each for two hundred dollars. Owners of old shares were entitled to exchange them, without additional payment, for new; and the corporation was empowered to sell all shares undisposed of, at prices not less than two hundred dollars per share.

It follows that plaintiff now, if still lawfully in the association, became a stockholder for one share, at face value of two hundred dollars.

It is admitted that in April, 1884, plaintiff demanded a certificate for his stock; which certificate was not issued to him. He now sues for the value of the stock, at the date of his demand; and it is shown that, at the time in question, the stock was worth more than the sum demanded.

Defendant pleads prescription of three, five and ten years; but, if the case be as plaintiff presents it, such a plea cannot avail. Fairex vs. Railroad Company, 36 La. An. 62.

A further defence is, that in 1872 plaintiff was "dropped from the rolls," for non-payment of annual subscription, or dues; hence, that he was not a "member" in 1873, when the amendment fixing capital stock at one hundred thousand dollars, and shares at one hundred dollars each was passed.

We find no showing of authority or right for the alleged "dropping from the roll," so far, at least, as such "dropping" is advanced as a bar to the plaintiff's action in this case.

In the original articles of association was ample provision for expulsions and suspensions. These could only be imposed,

upon formal charge, accompanied by due notice, and an opportunity of hearing—and, after all, only by vote of the Board of Directors, two-thirds or more of those present voting in the affirmative. Similar provisions are to be found in the formal charter of 1871. In face of these fundamental laws, the informal " dropping from the roll," so far as constituting an expulsion, or absolute deprivation of rights, against Vaudry is concerned, was an absolute nullity.

Moreover, Art. VII of the charter of 1871, provides this penalty for non-payment of the annual subscription : " no member shall be entitled *to admission to this Exchange*, whose dues are not paid by the 25th of November, and *such exclusion shall continue until all dues are paid.*"

If by "dropping from the roll " is meant that plaintiff's name was stricken from the list of those having the privileges of the floor, such action may have been valid ; but, to the extent contended for by defendant, that is, entire expulsion, with loss of all rights, it can have no effect.

It is ·contended by defendant that the right to receive new stock depended upon the fact that the party applying had paid up all dues and subscriptions ; but there is no warrant for this in the written charters submitted to the Court. These charters impose no condition, in this connection, other than payment of initiation fee ; and we cannot presume that a condition, excluded from the acts themselves, was intended to be of force. Nor can a court go beyond the expression of such written acts, to find stipulations which are not therein embraced by clear implication.

Moreover, it seems very evident that a distinction has been made to exist between the mere stockholding in this association, and membership. In the instrument executed in 1873, we find Article V imposing as a condition precedent to membership, the ownership of one "or more" shares of stock. On the other hand, by Article VI it is provided that: " the ownership of one or more shares of the capital stock of this association shall not confer upon the holder thereof any of the rights or privileges of membership."

So, the evidence shows that, as a fact, this stock is quoted upon the markets; and that many shares are held by persons who pay no dues.

There is in this case no plea of estoppel, and it has been decided by the Supreme Court that estoppel must be specially pleaded. Heirs of Wood vs. Nicholls, 33 La. An. 748

But were the absence of any formal plea overlooked, yet, from the facts, we can see no estoppel.

We have in this State specific laws of prescription; the object of which laws are to bar rights which have been permitted to slumber during an undue length of time. Mere delay, therefore, does not of itself defeat the assertion of rights, so long as the term fixed by Statute, for the prescription of such rights, is not accomplished. One interested as a stockholder in any corporation is not compelled, at peril of his rights, to show himself from time to time to the officers of his company; nor can he be prejudiced by mere abstention from inquiry, or from active interference in its affairs. He is presumed to know his charter, and has a right to suppose the same known to the officers and to his fellow shareholders; and he can, if he so wishes, rest during twelve years, as well as during twelve months, upon the hope and trust that the fundamental laws of his company will be respected and obeyed. It were a dangerous, as well as an unjust doctrine, to hold that mere silence on the part of shareholders amounts to acquiescence in the unlawful actions of those in charge of corporations. In these days, certificates of stock travel far, and they are often held in the same corporation by parties scattered over very wide territorial areas. Under such a doctrine, these scattered shareholders would many of them be entirely at the mercy of those who happen to be in active management of the affairs of their corporations.

Finally, there is no evidence whatever against the plaintiff in this case, that before his demand, he was aware of the fact that the defendant corporation had seen fit to erase his name from the list of shareholders, and to dispose of his share as if it belonged to the Exchange. Estoppel by acquiescence cannot be

founded alone upon the act or non-action of a party; but to have this effect, it is essential that the action, or non-action, be with knowledge of the facts. Bigelow on Estoppel (Ed. 1872), pages 538, 531; Spencer vs. Carr, 45 N. Y. 406; Brewer vs. Boston and W. R. Co., 5 Met. 478; Watkins vs. Cawthorne, 33 La. An. 1198.

In this case, it is shown that Vaudry left the City of New Orleans about the time of his alleged " dropping from the roll;" and there is nothing whatever to show that, before the sale of his share, or at any time previous to his demand in 1884, he was notified of this action.

Proof is made that this share of stock, which should belong to Vaudry, is no longer in the control of defendant; said defendant having disposed of it, with others. We consider it clear that plaintiff can recover its value. Woodhouse vs. Crescent Mutual Ins. Co., 35 La. An. 238.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be set aside and reversed; and that plaintiff do now recover of the defendant eight hundred and fifty dollars, with interest, as prayed for, and all costs.

---

### CONCURRING OPINION.

KELLY, J.—It is in proof in this case that the plaintiff was an original incorporator and stockholder of the defendant corporation, and that no corporate action was ever taken to divest him of his right as such stockholder.

Mr. H. G. Hester, who testifies that he has been connected with the New Orleans Cotton Exchange, as Secretary or Superintendent, from the period of its first organization continuously until the present time, testified as follows:

"Q. The first notarial charter passed incorporated this institution, and stated who the stockholders were?

"A. Yes, sir.

"Q. And among them it is stated that Mr. Vaudry was a stockholder?

"A. Yes, sir. (A duly certified copy of the notarial Act of

Incorporation, in which the plaintiff's name appears as a stockholder, is in evidence).

"Q. That fixed the fact that he was a stockholder, whether a certificate was issued or not? Now, the question is asked you, whether or not his stock, or his rights as a stockholder, as declared in that charter, were subsequently forfeited by any distinct act of the corporation?

"A. No. There was no action taken by the corporation at all."

Upon such evidence Vaudry would, undoubtedly, be held liable, at the suit of any creditor of the corporation, as a stockholder; and I consider the evidence quite conclusive in the affirmative, upon the question raised in this case, whether or not Vaudry was a stockholder when the demand for a certificate of stock was made in 1884.

The claim in reconvention, made conditionally and alternatively, in the event it should be held, that the defence that Vaudry was not a stockholder, is untenable, that, then and in that contingency, he be adjudged liable to the defendant corporation for annual dues as set forth in the reconventional demand, is not entitled to be maintained. The annual dues claimed are not for contributions called or assessed against shares of stock; nor is it pretended that liability for such annual dues is incident to the ownership of the stock, except as attendant upon the exercise by the owner of the stock of the privileges of the floor of the Exchange as member. It is manifest, from all the proof, that ownership of stock does not involve liability for dues for the privilege of the floor of the Exchange by a stockholder not claiming or exercising such privilege.

A stockholder removing from the City of New Orleans, as Vaudry did, and having no occasion or opportunity to make use of the privilege of the floor of the Exchange, as a member, for the purpose of the transaction of business there, could receive no equivalent, in that way, for the dues charged specifically for the right to exercise such privilege, and *not* for the right to own and hold stock in the corporation. It would be unjust and inequi-

table to charge Vaudry for the right of owning and holding stock in the corporation, with annual dues for privileges of the transaction of his business on the floor of the Exchange, which it is not pretended that he claimed or exercised during the period specified in the reconventional demand.

I concur generally in the opinion in the cause of my learned colleague and in the decree proposed.

## On Application for Rehearing.

KELLY, J.—The questions of law arising upon the undisputed facts of this case, were very fully and ably argued by counsel of both parties, and were determined by the Court upon due deliberation, upon grounds stated in the opinions of both Judges, delivered when the decree was rendered.

We have considered the brief of counsel, submitted in support of this application, and we still adhere to the conclusions heretofore announced. The learned counsel could not, it would seem, have read the opinion heretofore delivered by me in the cause, or they would not have assigned, as a ground in support of this application, that there is error in the decision in not passing upon the defendant's reconventional demand. The effect of the decree plainly is, as it was intended to be, to reject the recon-- ventional demand; and the reasons why it was considered that this should be done are stated in the concurring opinion.

The rehearing is denied.