No. 3566

Second Circuit

FIRST NATL. BANK OF WINNFIELD v. GUYNES ET AL.

(July 1, 1929. Opinion and Decree.)

John J. Peters and Moss & Moss, of Winnfield, attorneys for plaintiff, appellant.

Harry Fuller & George Wallace, of Winnfield, attorneys for defendants, appellees.

ODOM, J. The issues in this case appear at first blush to be somewhat involved, but, narrowed down, the question is whether A. D. Potts owns a certain check for $400, or whether that check is owned by the Cedar Creek Petroleum Company.

The First National Bank of Winnfield, plaintiff herein, is a judgment creditor of A. D. Potts, and in January, 1928, obtained a writ of fieri facias under its judgment, and by petition made the Bank of Winnfield, another bank in the same town, a party garnishee, and propounded to it interrogatories in order to ascertain if it was indebted to the said Potts, or if it had in its possession any money or other property belonging to him.

The Bank of Winnfield answered that it had in its possession a certain check for $400 in which Potts was interested, but could not say whether the check was owned by Potts or the Cedar Creek Petroleum Company, for the reason that the check, together with an assignment of a lease, was left with it under an escrow agreement between the said Potts and the petroleum company; that it had no interest in nor control over either the check or the lease assignment, but held both subject to the further orders of the parties who deposited them with it.

When these answers were filed in court, the district judge ordered the garnishee bank to deliver the check and the assignment to the clerk of the district court, same to be held by him subject to its further orders, and the bank was discharged and dropped out of the case.

Subsequently, the plaintiff bank seized in the hands of the clerk under its fi. fa. whatever right, title, or interest Potts had in and to the check, and, in due course, such rights or interest as Potts had were sold for $385; the plaintiff bank being the purchaser. Plaintiff then demanded that the clerk deliver the check to it, and, upon his refusal to do so, ruled him to show cause why the delivery should not be made. He answered that he had no interest in the matter, but was simply holding the check by order of the court and would deliver it only upon the court's order. The

Cedar Creek Petroleum Company then came into the case, and by petition set up that it, and not Potts, was the owner of the check, and that the said check was not subject to seizure by a creditor of Potts. and asked that the check be ordered delivered to it. Potts, being an absentee, was represented by a curator ad hoc appointed by the court. There seem to be some irregularities in the proceedings, but, as no one has complained on that account, we shall not notice them. Finally the issue became joined between the plaintiff bank, the seizing creditor of Potts, and the petroleum company, as to whether Potts or the petroleum company owned the check. The district judge found and held that it was owned by the petroleum company, and ordered it delivered. as prayed for. The plaintiff bank has appealed.

## OPINION.

The history of the transaction out of which the issue as to the ownership of the check grows dates back to May, 1926. At that time the Cedar Creek Petroleum Company was operating for oil in the Urania field, and owned leases on several tracts of land, one of which was the S. W. ¼ of N. E. ¼ of section 6, township 10 north range 2 west. Being cramped for cash, it seems, to carry on its drilling operations, and in order to realize funds, the company and Potts entered into an agreement by which the company assigned to Potts its lease on the above-described 40 acres of land for the cash consideration of $400. The company executed the assignment, but Potts asked for time in which to investigate the title, and he and a representative of the petroleum company agreed that the assignment of the lease, together with Potts' check to cover the consideration, should be deposited in escrow in the Bank of Winnfield, with the understanding that, if Potts approved and accepted the title, then the bank should deliver to him the assignment of the lease and deliver the check to the company. Potts and a representative of the petroleum company went to the bank where the check and the assignment were left in escrow, with instructions as above stated. The company at once had an abstract of the 40 acres of land made and promptly delivered it to Potts. Potts made no complaint to the company or to any one else of any defects in the title, and, shortly thereafter, left for parts unknown without giving the bank, the escrow agent, any instructions as to whether he accepted the title or what it should do with the check or the assignment. So matters stood until January, 1928; the escrow bank retaining the check and the assignment during all that time. In the meantime, the petroleum company took no steps to have the check delivered to it, and made no open claim to it until the court ordered the escrow bank to deliver the check to the clerk after these proceedings were begun. The district court held that the company was the owner of the check and should have possession of it. Appellant assigns the following errors:

(1) That the assignment of the lease was never accepted by Potts.

(2) That the petroleum company, having failed to exercise its right under the escrow agreement for more than two years, is now estopped to assert any claim to the check.

(3) That the escrow agreement could not be proved by parol testimony.

We dispose of these assignments in the order named:

1. There is no direct testimony in the record that Potts accepted the title and

was willing to have the escrow bank surrender the check to the petroleum company, but there is testimony which shows to our entire satisfaction that he intended to and did accept the title, and that he considered the matter finally closed, although, as stated, he did not tell the escrow agent or the petroleum company.

A man named Robinson was head driller for the petroleum company at the time, and the company owed him several hundred dollars back salary, and it was to get money to pay him that the lease was sold to Potts. After the check and the assignment were deposited in the bank, and after the abstract had been delivered to Potts, a representative of the petroleum company asked him to pay the money over to Robinson. Whereupon Potts drew his check on the Bank of Winnfield for $400, the exact amount he had put up to pay for the lease, in favor of Robinson, and Robinson had the check cashed at the plaintiff bank (not the Bank of Winnfield), after said check had been endorsed by Robinson and Guynes, then president and general manager of the petroleum company. Potts' check to Robinson was evidently intended to be drawn against the $400 which he had deposited in escrow to pay for the lease, for he had no other funds there. This shows to our satisfaction that he had accepted the assignment and intended to close the entire transaction. His payment of the $400 to Robinson was a payment to the company at the suggestion of Guynes, president and general manager. The Bank of Winnfield, on which Potts' check to Robinson was drawn, did not honor and pay it when presented, because, as we gather, there had sprung up some disagreement among the officers and stockholders of the petroleum company, one of the former having notified the drawee bank not to deliver the amount deposited in escrow to any one except the company. But, so far as Potts was concerned, he drew against the funds in favor of Robinson, an employee and creditor of the company, at the instance and suggestion of Guynes, the president and general manager.

The testimony makes it clear that Potts understood that, while his check was to Robinson, yet he was paying the petroleum company's debt to one of its employees. That was a delivery of the money to the company. The testimony shows that Robinson was given authority to find purchasers for leases and that the money paid for such leases as he sold them was to go to him until he was fully paid. Potts had no interest in the company and certainly no interest in paying to Robinson or any one else connected with the company any amount except that which he had deposited to pay for this lease. So it is evident, we think, that Potts intended to close the transaction and turn over the $400 for the lease. Any other theory would be inconsistent with his subsequent conduct. He received the abstract and kept it, and did not complain of any defects in the title. Later on he left the parish, and, up to the date of the trial of this suit, he did not claim that the money should be returned to him. If he had intended to refuse the title and finally reject the assignment, which he had a right to do under the agreement if the title was defective, he had ample time and opportunity to do so. If such was not his intention, it would seem most strange that he should go away and leave his money in the bank. We think the transaction was closed. The moment it was so closed the amount deposited by Potts as the consideration for the assignment, represented by the cashier's check now in controversy, belonged to the company, and the assignment belonged to Potts. It is easy to understand why Potts

did not call on the escrow bank to deliver to him the lease. The well which they were drilling turned out to be a dry hole, and the lease was worthless. Our holding that the assignment was accepted by Potts makes it unnecessary to discuss the question of title raised by the plaintiff bank.

2. The plea of estoppel is not good. The day that Potts drew his check in favor of Robinson, intending thereby to deliver the amount in escrow to the petroleum company, the money put up for the lease belonged to the company. That money was and is represented by a cashier's check, drawn by the Bank of Olla in favor of the Bank of Winnfield, at the instance and request of Potts. That check should now be delivered to the petroleum company. The company's delay in claiming the check did not cut it off from doing so. Its right to the check had long since accrued, but its delay in asserting its right did not work an estoppel against it. The district judge in his written opinion said:

"From the evidence it seems that the greatest fault that the Cedar Creek Petroleum Company is guilty of in this matter is its long silence and inaction in asserting its legal rights to this check, but as it has not been silent long enough to prescribe and as there has been continuous litigation over this matter, the Court is of the opinion that the Cedar Creek Petroleum Company is not estopped from asserting its rights to the funds of this check."

We add that the litigation spoken of by the district judge was not over the amount represented by the check in controversy, but over the check which Potts gave Robinson, and which was cashed for Robinson by the plaintiff bank.

There is such a principle in law as "estoppel by silence." That estoppel arises only in those cases where "a person who by force of circumstances is under a duty to another to speak, refrains from doing so, and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice." 16 Cyc. 681.

In Taylor Co. vs. New York & Cuba Mail S. S. Co., 159 La. 381, 105 So. 379, the court quoted approvingly the following:

"A person, who by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and to act accordingly, is estopped"—citing Branson vs. Wirth, 17 Wall. 32, 21 L. Ed. 566.

The plea of estoppel is here interposed by the plaintiff bank, but the silence of the petroleum company has not in any way misled plaintiff to its prejudice.

3. Counsel contends that the escrow agreement could not be proved by parol testimony. We find no merit in this contention. The escrow agreement was not in writing, and did not need to be.

"Although some of the authorities hold that the condition upon which the instrument was deposited must be expressed in writing, the weight of authority is to the effect that it need not be so." 21 C. J. par. 7, p. 868.

A verbal agreement may be proved by parol testimony. The assignment of the lease and the check were in writing. Parol testimony could not, of course, be admitted against or beyond what was contended in these acts. Civ. Code, art. 2276. But they were merely deposited with the bank with verbal instructions as to what disposition should be made of them, and it was the latter agreement which the court permitted to be proved by parol testimony. There was no error in that.

The judgment appealed from is affirmed, with costs in both courts.