**REED v. EUREKA HOMESTEAD SOC.***
No. 14257.

Court of Appeal of Louisiana.  Orleans.
Oct. 17, 1932.

See, also, 174 La. 823, 141 So. 847.

*Rehearing granted November 28, 1932.

892

Marion C. Seeber and Joseph Rosenberg, both of New Orleans, for appellant.

Percy S. Benedict, of New Orleans, for appellee.

WESTERFIELD, J.

Petitioner, alleging that she had on deposit with the defendant homestead company $2,318.90, whereas it acknowledged an indebtedness of only $517.44, sued for an accounting and for judgment for such sum as may be found to be due. Defendant answered alleging that it has to the credit of plaintiff "upon her pass book No. 16218, the sum of $517.44, which is the true, just and accurate amount due and owing to said plaintiff, and for which amicable demand has never been made, and the tender of which has been repeatedly refused."

There was judgment below in plaintiff's favor for $517.44, and plaintiff has appealed.

It appears that plaintiff, Miss Mattie Reed, and her father, J. W. Reed, were both depositors with the defendant company. On the 13th day of May, 1919, her father caused the amount appearing to his credit, $978.35, to be transferred to his daughter's account, and entered to her credit on her pass book, his account being closed out. On the same day, Miss Mattie Reed executed a will leaving all of her possessions to her father, the will and the pass book being allowed to remain in the custody of the defendant. After the transfer of the father's credit to his daughter's account, she continued to make deposits from time to time, and occasional withdrawals. Concerning these deposits and withdrawals there is no question. The father, however, who was a retired boiler maker, 74 years of age when he made the transfer of his funds to his daughter in 1919, continued to draw upon his daughter's account, as though it was his own, up to the time of his death in 1927, at the age of 82. During this period he withdrew the sum of $1,761.46, in thirteen installments of different amounts. His daughter disclaims any knowledge whatever of these withdrawals, and denies all responsibility therefor.

■ The record shows that Mr. Reed would go to the office of the homestead and would ask for such sum as he desired to withdraw; that the homestead would issue its check to the order of Miss Mattie Reed, whereupon Mr. Reed would indorse his daughter's name and his own name; that the homestead would then pay over to him the amount in cash. The checks were not indorsed by Miss Mattie Reed, and she is not shown to have had any knowledge of the transaction. The fact that Miss Reed had made a will in her father's favor, and the fact that he had transferred a considerable amount to her account, together with the relationship of father and daughter, is relied upon as justifying the action of defendant in permitting plaintiff's father to draw upon her account. We cannot follow counsel in his contention, and are of the opinion that the will and gift are of no importance, because the account was in the name of Mattie Reed and the defendant owed her the duty of preserving it until such time as it might be withdrawn by her, or by her authority. It is not contended that her father was authorized to draw against the account. He had no more right to her funds than a stranger. We recognize the fact that defendant made these payments to the father from his daughter's account with the sole intention of accommodating the father, believing his action in that respect had the approval of his daughter, or would, at least, receive her ratification, but in this they were mistaken and are so unfortunate as to have the daughter repudiate the entire transaction as having been done wholly without her knowledge or consent. Under the circumstances, payments to the father were made at the peril of the defendant, and cannot be charged to plaintiff.

■ Defendant, however, pleads estoppel upon the ground that during the period covered by her father's withdrawals, plaintiff received a number of semiannual statements of her account without objecting to the balance shown to be due her, and upon the further ground that it was the invariable custom of the defendant, as testified to by its employees, to demand the production of the pass book before any withdrawals of funds were permitted, and "the fact that on August 8, 1928, the time of her last withdrawal, she took the book and made no objection to the figures it contained; the fact that thereafter subsequent deposits were made in the book without protest; and the further fact that until some very kind friend suggested to her that she might be able to get her money back, she never thought of bringing this suit, because if her statement were true, her father might be prosecuted for forgery." As to the inference that plaintiff's forbearance was due to the fear of a criminal prosecution against her father, we find no proof in the record. Moreover it might well be doubted if her father was in fact guilty of forgery in signing her name and his own to a check in the presence of the maker of the check who cashed it. The fact that plaintiff continued to make deposits after the last withdrawal by her father and herself, and that she took her book with the balance reduced by the amount of these withdrawals without protest, can be said to prove that she knew the defendant was claiming to owe her less than she claimed to be due, but falls far short of establishing in her such knowledge as would amount to an acquiescence by silence and create an estoppel against her. The authority quoted by defendant's counsel (Curl v. Bank, 104 La. 548, 29 So. 234), to the effect that when a person has done or said anything with intent to influence the dealings of another, and that oth-

er has acted upon the faith of it, the former ought not to be permitted to change it to the injury of the latter, finds no application here, because the plaintiff has not said or done anything which could have influenced the homestead, nor has the homestead acted upon the faith of any word or deed of plaintiff to its injury.

■■ There is no showing here which would justify the conclusion that plaintiff knew anything whatever concerning her father's withdrawals. The mere assumption that a daughter would know what her father would do in a matter of this kind does not constitute proof of authorization or of knowledge. In order to establish estoppel by acquiescence, it must be affirmatively proven that the party against whom the estoppel is pleaded had knowledge of the facts. Vaudry v. Cotton Exchange, 2 McGloin, 154; Halliday v. Napoleon Avenue Land Company, 5 Orleans App. 236.

■ A delay in the assertion of a claim will not operate as an estoppel so long as prescription has not run. Davis v. Young, 36 La. Ann. 374.

"An acquiescence in an account containing illegal charges, will not estop the debtor from pleading their illegality." Keane v. Branden, 12 La. Ann. 20. See, also, Delogny v. Creditors, 48 La. Ann. 491, 19 So. 614.

In First National Bank of Winnfield v. Guynes et al., 11 La. App. 323, 123 So. 461, 463, the Court of Appeal for the Second circuit, held that mere silence, which did not exceed the prescriptive period, did not work an estoppel.

"From the evidence it seems that the greatest fault that the Cedar Creek Petroleum Company is guilty of in this matter is its long silence and inaction in asserting its legal rights to this check, but as it has not been silent long enough to prescribe and as there has been continuous litigation over this matter, the Court is of the opinion that the Cedar Creek Petroleum Company is not estopped from asserting its rights to the funds of this check."

■ We concede that the defendant in this case was innocent in the transactions complained of, being the victim of Mr. Reed's imposition, or it may be that Reed believed himself entitled to his daughter's money, but so also must it be conceded that Miss Mattie Reed was no party to the transactions complained of, which were effected without her knowledge or consent. The fact remains, however, that it was the negligence of defendant that made it possible for the loss to occur, and, under such circumstances, the authorities are clearly to the effect that the one whose negligence occasions the loss much suffer the damage. 3 Louisiana Digest, Verbo "Estoppel," § 34, and authorities therein cited.

Our conclusion is that the plaintiff should recover the amount of the disputed items charged to her account.

Consequently, and for the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by increasing the amount awarded plaintiff from $517.44 to $2,278.90, and, as thus amended, it is affirmed.

Amended and affirmed.