FRUGÉ, Judge.
This suit was originally brought against Raymond F. Heritage, C. A. Bonneau and American Oil Company by Charles J. Pan-zica, individually and as curator to the interdict, Mary E. Panzica. An exception of no cause of action as to Heritage and Bonneau was sustained, but that of American Oil Company was rejected on the theory that the petition stated a cause of action as to them. The case was tried on the merits resulting in judgment partially for plaintiff, and otherwise in favor of defendant. From the judgment plaintiff prosecutes this appeal.
This suit is for “compensable damages” allegedly caused by the failure of defendant, American Oil Company, to complete “a contract of lease with plaintiffs” for certain property owned in indivisión by Charles J. Panzica and his sister, Mary E. *317 Panzica, the interdict. The facts were related by the Judge below as follows:
“Admitted facts in the case are that plaintiff Charles J. Panzica began negotiations for the lease in July 1959 with two agents of the defendant company, Sullivan and David. Subsequently another agent or representative of the company, D. A. Mueller, reached an agreement with plaintiff Charles J. Panzica on the general terms of the lease, this being on September 4th. On September 9th Mr. Mueller left a copy of the lease form with Mr. Panzica, and on September 11th this agent discussed changes to be made with Mr. Staples, attorney for the plaintiffs. On September 24th Mr. Mueller left the final 'lease form with Mr. Panzica and Mr. Staples. On November 5th a final meeting was held and on this occasion Mr. Panzica executed the lease contract on behalf of himself and his sister, it being then turned over to another agent or representative of the company, a' Mr. Heritage. At this point Heritage delivered the lease to Mr. Bonneau, another company representative, who mailed it in to the company’s district office.
“According to Mr. Panzica’s testimony Heritage and Bonneau informed him on the occasion when he signed the lease that ‘it was almost a cinch that it would go through’. Also that the lease had to go to the home office and we should hear about it ‘in due time’.
“The statement of plaintiffs’ attorney, Mr. Staples, is that Heritage and Bonneau brought the lease form to him for final checking and told him at the time that approval by the company could be expected in about two weeks.
“Finally, the testimony of Mr. Pan-zica is noted to the effect that Mr. Bonneau informed him, at some point in the course of events, that the house on the property would have to be moved before January 1, 1960. Also, that several times after the lease had been delivered he called Bonneau to find out about whether he had heard from the cqmpany and each time he was told ‘nothing yet’. About December 29th Bonneau called him and told him to tear up the papers as the company had refused to approve the deal. In this connection Mr. Bonneau testified that he did on several occasions inform Mr. Panzica that he had received no word from the company. He denied ever telling Mr. Panzica that the house had to be moved before the lease was accepted.
“As we have observed from the pleadings, this action is one for the recovery of compensatory damages ‘because of the failure of the American Oil Co. to complete the contract of lease’. The basis of the action is found in Paragraph 9 of the petition reading:
“ ‘That defendant’s agents were at all times assuring petitioners that the lease would be signed by the “home office”, and that it was only a question of time for it to be brought up during-the course of its routine business by the American Oil Co.
“ ‘That at no time did said agents state or even “hint” to your petitioners-that the lease might not be executed by the American Oil Co.; because of the desirable location for their filling station said agents at all times told and lead petitioners to believe that the deal was a “cinch” and to be ready to give the desired possession of January 1, I960.’
“The argument on behalf of plaintiffs is quite brief and, as to the claim for loss on the building, it is simply said that ‘In conformity with the verbal contract of lease, which plaintiffs believed binding and in effect, plaintiffs had to sell the seven room frame dwelling * * * ’ This conclusion is- *318 predicated upon the claimed statement of Bonneau that the building had to be moved before January 1, 1960. As to the claimed loss of rentals it is said that ‘plaintiffs could have rented said dwelling at $80.00 per month if it had not entered into the verbal contract of lease, from August 1, 1959 through January 1960 * * * ’ Cited are numerous case authorities dealing with estoppel.
“From the pleadings of plaintiffs and the testimony of Mr. Panzica it is crystal clear that the latter knew at all times that he was dealing with agents or representatives of American Oil Company; that these parties never claimed to have authority to bind their principal, and that the lease would have to be finally approved by the company’s home office. This simple statement should be sufficient to disclose the complete lack of any legal basis upon which the company could be held liable for the claimed loss of rents and value of the house moved off the premises.
“Further, there are provisions in the proposed lease which in themselves nullify the contention of Mr. Panzica that he believed it to be necessary to remove the house before January 1st in order that full delivery of the property would be accomplished. Paragraph 6 of that instrument provides that the lease agreement is conditioned upon lessee securing and accepting, within 120 days from the date of the lease, certain licenses, permits and franchises. Paragraph 7 following reads: ‘Lessor covenants to deliver actual possession of the demised premises unto Lessee, free of possession or the right thereof by all other persons, firms or corporations, within thirty (30) days after receipt of written notice from Lessee that it has received and accepted the aforesaid licenses, permits and franchises.’ Additionally, in and addendum clause numbered [22] it is stipulated: ‘Lessor agrees to remove the one story frame dwelling located on the herein described property within thirty (30) days after receipt of written notice from Lessee that it has received and accepted the licenses, permits, and franchises referred to in Paragraph Six (6) hereof.’
“Further, this court is unaware of any authority whereby a prospective lessee may be held liable for loss of rents from property contemplated to be leased during the period of negotiations concerning the proposed lease, simply because the negotiations failed and no contract was consummated.”
With the foregoing we are in full accord. Moreover, paragraph 20 of the proposed lease provides that: “[t]his lease shall not be deemed to be accepted by Lessee or binding upon it unless the same shall have been duly signed by its [Blank in original lease], And an executed copy thereof delivered to Lessor.” The lease never was signed by Lessee and therefore it never became binding as such.
Plaintiffs contend that defendant, American Oil Company, had a duty to and should have “spoken long before”; that by such silence plaintiffs were caused to act to their detriment and that defendant is estopped to deny the damages caused plaintiff and cites certain authorities pertaining to es-toppel and quantum meruit. Estoppel by silence is defined in First National Bank v. Guynes, 11 La.App. 323, 123 So. 461, 463, (one of the cases cited by plaintiffs) to be:
“That estoppel arises only in those cases where ‘a person who by force of circumstances is under a duty to another to speak, refrains from doing so, and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice’ ”. (Emphasis added.)
In view of the lease which plaintiff had signed and which defendant, American Oil Company, had in its possession there was *319 no duty to speak. The very terms of the lease are that the lease is not binding until signed and that the buildings were to be removed and actual possession given to defendant within thirty days of the signing of the lease by defendant. Defendant cannot be held to be responsible for damages, if any, caused by plaintiff’s hasty and premature act in removing the building under either estoppel or quantum meruit.
We have not considered the question of whether or not $225 for attorney’s fees and court costs were properly assessed as defendant in brief and in oral argument has agreed to pay this amount and therefore it is not at issue.
For the foregoing reasons the judgment appealed from is affirmed. Plaintiff-appellant to pay costs of this appeal.
Affirmed.