**SMALL v. McNEELY.**

No. 6078.

Court of Appeal of Louisiana. Second Circuit.

April 4, 1940.

Pyburn & Pyburn, of Shreveport, for appellant.

Dimick & Hamilton, of Shreveport, for appellee.

DREW, Judge.

Plaintiff alleged he was the owner of the following described property situated in the City of Shreveport, Caddo Parish, Louisiana: An undivided one-half interest in and to the Southeast 145 feet of Lot 15, Block 2 of Ten-acre Lot 19; as per plat thereof duly recorded in Book L, page 362, of the records of Caddo Parish, Louisiana, and all improvements thereon.

Plaintiff further alleged that he acquired his interest in the following manner:

That the property was acquired during the existence of the community of acquets and gains between him and his first wife, Mrs. Bernice Ziegler Small; that said community acquired the property on November 5, 1919, from Florence Iles and that title was taken in the name of the wife; that he has never sold his interest in said property and that his title has not been otherwise divested; that Arthur McNeely is in actual physical possession of said property and claims title to same under the following instruments:

1. Myrtle O'Donnell, administrator of the estate of Myrtle O'Donnell, deceased, to Arthur McNeely, as per deed dated October 16, 1937, and duly recorded;

2. Judgment dated January 8, 1934, Succession of Bernice Small, in which judgment Myrtle O'Donnell was recognized as sole heir of deceased and sent into possession of the property described; and

3. Deed from Mrs. Florence Iles to Mrs. Bernice Small, dated November 5, 1919.

Plaintiff further alleged that Mrs. Florence Iles acquired said property by deed from Fannie Hammond Trezevant on March 14, 1916; that Florence Iles is the common author of both plaintiff and defendant's title and the latter is estopped to question the title of their common author.

Plaintiff alleged that the rental value of the said property is $35 per month and that he should have judgment for one-half the rental value from the date of the beginning of possession by defendant, Arthur McNeely, which was October 16, 1937. He further alleged the property was not susceptible of being divided in kind and prayed for a partition by licitation.

Defendant in answer denied that plaintiff owned any part of said property or that he was entitled to any of the rental value. He admits he is in possession of the property as owner and under a good and valid title to same. Further answering, defendant averred that the property in question was acquired by Mrs. Bernice Small with her separate and paraphernal funds under her separate administration and control, being a reinvestment of her separate funds, same having been acquired and earned by her before her marriage to plaintiff and by her after her marriage to him, but while living separate and apart from him, and by inheritance from a deceased relative and that the deed of acquisition, as shown by the certified copy made a part of plaintiff's petition, so recited.

Further answering, defendant shows that he acquired said property at the Succession Sale referred to in plaintiff's petition; that he had no knowledge whatsoever of plaintiff's pretended claim; that plaintiff insti-

tuted suit for divorce from his wife, Mrs. Bernice Small, in December, 1919, and obtained a judgment of divorce in January, 1920; that neither in said divorce proceedings nor otherwise did plaintiff ever claim or pretend to claim that the property herein described was community or that he had a claim to any part thereof; that in the year 1933, the said Mrs. Small died and her succession was opened, and that the plaintiff did not at that time appear or make any claim to any portion of the property in question here, but allowed her daughter, Mrs. Myrtle Small, to be recognized as sole heir of her mother's succession and, as such, placed in possession of all property, including that described herein; that plaintiff has allowed 19 years to elapse without questioning or challenging the sole right and title of Mrs. Myrtle Small and her successors in title to said property in its entirety; that petitioner acquired said property upon the faith of the public record and of the instruments and proceedings hereinabove referred to and that, by reason of his silence and laches, plaintiff is now estopped from claiming any right, title and interest in and to said property, and defendant especially pleads this estoppel.

Defendant avers further that his predecessor in title, Mrs. Bernice Small, acquired said property in its entirety, in good faith and by a just title on November 5, 1919, and immediately went into possession thereof and that she exercised and enjoyed continuous, uninterrupted, peaceable, public, and unequivocal possession of said property for more than 13 years to the date of her death; that after her death, her said daughter exercised and enjoyed the same character of possession until her death in 1937, and that defendant has likewise enjoyed the same character of possession since his acquisition at Succession Sale, as aforesaid, until the present date. That plaintiff is barred by the prescription of ten years from making any claim to any part of said property, and defendant especially pleads the prescription of ten years as a bar to plaintiff's suit.

On these issues, the case was tried, resulting in judgment rejecting the demands of plaintiff. From that judgment he is prosecuting this appeal.

On November 5, 1919, Bernice Small, wife of S. O. Small, acquired the property in dispute by deed from Florence Iles, the consideration being $2500 cash. The deed recites,—"the vendee herein purchases with her own separate and paraphernal funds and to form no part of the community of acquests and gains existing between her and her husband." The following month plaintiff instituted divorce proceedings against his wife, Bernice Small, and was granted a divorce in January, 1920. In that proceeding he did not make any claims to the property he is now claiming.

In the year 1933, Bernice Small died and her Succession was opened, her daughter, Myrtle O'Donnell, being put into possession of the property as the sole and only heir of Bernice Small. No claim of any kind was advanced at that time by plaintiff. Myrtle O'Donnell possessed the property as owner until 1937 when she died. Her estate was administered on and the property sold at administrator's sale and purchased by the present possessor and defendant in this suit. At that time plaintiff made no claim to the property and it was not until September 23, 1938, when this suit was filed, that plaintiff ever made any claim to an interest in the property.

Based on the above facts, coupled with the testimony of defendant that he purchased the property on the faith of the public records and had no knowledge of any claim of interest by plaintiff until this suit was filed, defendant pleaded estoppel against plaintiff's claim.

It must be borne in mind that this suit was not filed until after the lips of Bernice Small and her daughter were both silent in death and could no longer defend the claim now being made by plaintiff.

There is much merit in the plea of estoppel, under the authority of the following cases: Wooters v. Feeny, 12 La. Ann. 449; Reinach v. Levy, 47 La.Ann. 963, 17 So. 426; Hammon v. Sentell, 160 La. 589, 107 So. 437; Marshall v. Smedley, 166 La. 364, 117 So. 323; and numerous others unnecessary to cite, the plea could be sustained and the suit ended, but we prefer to determine the case on another issue, that is, that Bernice Small was living separate and apart from her husband at the time she earned the money with which she purchased the property and that the administration thereof was separate and apart from her husband.

In the case of Houghton v. Hall, 177 La. 237, 148 So. 37, 47, the court held

that property acquired by the wife during marriage is presumed to pass into the community and become the property of the community existing between her and her husband, and that the presumption is not overcome by the declaration of the spouses in a deed to the wife that the latter is purchasing with her own separate and paraphernal funds under her separate administration and that the wife and those claiming under her, to overcome the presumption, must establish three crucial facts, viz.: (1) the paraphernality of the funds; (2) the administration thereof separate and apart from her husband; and (3) investment by her. In that case, it is made clear that in order for the property to become a separate property of the wife, she must be living separate and apart from him and the fact that she carried on a business separate and independent of her husband was not sufficient to take the property out of the community, unless she was living separate and apart from him.

■ With this position in mind, we shall relate the facts of this case:

Plaintiff claims to have married Bernice Small in McAlester, Oklahoma, in 1911. About that time or soon thereafter, Bernice Small was an inmate of a house of prostitution in McAlester, Oklahoma. In 1912 or 1913, she is shown to have been a prostitute, living in a house operated by Annie McKune, in the Red Light District of Shreveport. Later, she moved to a house operated by Anna Jones in the same District and remained there until the District was closed,—about 1917 or 1918. She then moved to Travis Street and operated an assignation house and bootlegged beer.

After purchasing the property involved herein, on which was located a residence, Bernice Small continued her trade. During this period of time she had a savings account in two Shreveport banks and over a period of years and up to the date of purchasing this property, she accumulated a fair savings account. It was on one of these accounts that she gave a check for $2500 in payment of the purchase price of the property.

Whether plaintiff came to Shreveport with Bernice Small or not is not shown by the record, however, a policeman whose beat covered that part of the City testified that he never saw plaintiff in Shreveport until about 1917. Plaintiff was an itinerant typewriter repair man. The record dis-closes that he would leave Shreveport and be gone several weeks or may be months at a time. When he returned he generally had some money and would immediately get drunk and stay in this condition until his money was gone. The policeman who covered the Red Light District beat was well acquainted with plaintiff and gave the most enlightening testimony regarding him of anyone. He testified that plaintiff usually spent his money in the house where his wife was living and plying her trade and that, as soon as he became broke, he would be kicked out into the street just as any other man would be. Plaintiff was usually picked up by the police, put in jail, and when released would borrow money from the policeman and leave town; and when he again made some money, would return and the same procedure was gone through again. This policeman considered him as just another man throwing his money away in the Red Light District and, from his testimony, we have concluded the same thing. It is not shown that his wife showed him any more favors than she did anyone else.

Plaintiff's testimony is very meager as to details and that is no doubt due to the fact that he was always well intoxicated while in the house where his wife was. He does not claim to have occupied the same room with her or that they ate together or anything else to support his position that they were living together. The landlady who operated the house, under the name of Anna Jones and is the same person who sold the property in dispute to Bernice Small, testified by deposition and her testimony is unusually fair in every respect. Things she did not know, she said so, and in no way did she attempt to color her testimony or to favor anyone in giving her testimony. However, she was positive that Bernice Small was living separate and apart from the plaintiff and did not for many years prior to the date she acquired the property in dispute live with the plaintiff. She was in a position to know this fact, due to her position as Bernice Small's landlady.

The former policeman who testified in the case stated that it was his business to keep a watch on the houses of ill fame in the District and to know who stayed there, and no man was allowed to remain for any appreciable length of time at a house. In other words, a man was not allowed to live in one of these houses. It therefore strikes us very forcibly that any woman who was

an inmate of one of the houses of ill fame necessarily lived separate and apart from her husband.

Plaintiff testified that at various times he gave his wife money, once the sum of $300 and another time $200. There is no corroboration of his testimony and, when we take into consideration the other testimony given by him, which is unbelievable, we give little weight to any of it. For instance, plaintiff testified that he did not know his wife was a prostitute, although she was a regular inmate of the most notorious houses of ill fame in North Louisiana for many years, and he claims to have visited her on numerous occasions.

It is certain, to our minds, that Bernice Small's place of residence was not that of her husband, even though he may have visited her there on occasions. It is equally as certain that the business or trade she carried on was separate from her husband and one in which he could not engage or take part. The money she earned she administered separately, deposited it in the banks at more or less regular intervals and invested it or a part of it in the property in dispute in this case.

The lower Court found the property to have been the separate paraphernal property of Bernice Small and not a part of the community of acquets and gains existing between her and her husband, the plaintiff herein.

The judgment is correct and is affirmed, with costs.