The defendant, Gus Lass, has taken a suspensive appeal from a judgment rendered by the Twenty-Fourth Judicial District *Page 914 
Court for the Parish of St. Charles on January 14, 1946, wherein he was permanently restrained, enjoined and prohibited from going upon certain land situated near St. Rose, Louisiana, in St. Charles Parish, known as the Lambert Plantation, at the instance of plaintiffs, who allege that they are the owners of an undivided 10/99ths of the property. The underlying facts of the litigation are as follows:
By deeds of purchase dated April 1, 1891, and February 9, 1894, plaintiffs' grandfather, John Lambert, acquired certain tracts of land, situated in the Parish of St. Charles, which later became the John Lambert Plantation. At the time of these purchases, John Lambert was married to Marie A. Cambre and, therefore, the property became part of the community existing between them. Nine children were born of the marriage between John Lambert and his wife, namely, John M., Edmond F., William A., George B., Henry T., Paul Daniel, Joseph O. and Adela Lambert and Mrs. Adele B. Lambert, wife of Julian B. Lobell. Mrs. Marie Lambert, the mother, died on February 16th 1919 and John Lambert, the father, died on April 7th 1931. Neither the succession of Mrs. Lambert nor that of her husband has ever been opened.
Sometime after the death of his wife, John Lambert expressed a desire that the plantation be divided, or partitioned in kind, between his children after his death and, during the year 1924, he employed a surveyor to stake off the property into nine separate and distinct parcels. This surveyor, one Landry, did not make a map showing the division but, subsequent to his examination of the property, he apparently reported his findings to one W.A. Blalock, Civil Engineer, who prepared a plan from Landry's notes wherein it was proposed that the plantation be divided into nine separate and distinct lots each having a frontage of 121 feet on the Mississippi River by a depth of 80 arpents to the rear. This plan, which is dated April 23rd 1924, is signed by Blalock and also by John Lambert and all of his children and, according to it, Joseph O. Lambert, father of plaintiffs; is allocated lot No. 3. The plan was never recorded.
In furtherance of his desire to subdivide the plantation among his nine children, John Lambert formed a corporation on September 11, 1928, named "John Lambert Realty Company, Inc.," and transferred to it his undivided one-half interest in the plantation. The capital stock of this corporation was for $5000, represented by 50 shares of a par value of $100 each. Forty-eight of these fifty shares were issued to John Lambert, apparently in consideration of the transfer of his undivided one-half interest in the real estate; one share was issued to his son, John M. Lambert, and the remaining share to his daughter, Adela Lambert, evidently as qualifying shares, so that they, with their father, could compose a Board of Directors. On the same day that this corporation was organized, John Lambert, on his own behalf and in his capacity as President of John Lambert Realty Co. Inc., acting by virtue of a resolution of the Board of Directors of the Company, entered into an agreement with his nine children wherein it was provided "That after the death of the said John Lambert, said tract of land (Lambert Plantation) will be partitioned among the parties hereinafter named in the following manner to wit:" (Words in parenthesis ours.) Then follows a distribution of the land involved between the nine children in accordance with the plan made by Mr. Blalock. Provision is also made in this agreement that certain buildings located on the plantation would be partitioned by the children after Mr. Lambert's death "or disposed of by them in any manner they see fit." Provision was likewise made respecting the ownership of certain furniture and movable effects located in the residence and buildings situated on the plantation.
This agreement was acknowledged before the Clerk of Court of St. Charles Parish but was not recorded until November 15th 1932, over a year after John Lambert's death. It, however, appears that, long prior to the making of this agreement to partition the property in kind, the children of John Lambert took possession of the lots allocated to them under the plan of subdivision made by Mr. Blalock in 1924. But it is also shown (the evidence on this point being somewhat conflicting) that the lots, as allocated *Page 915 
under the plan of Blalock, were not staked off; that the children used parts, other than their own lot, for cultivation, ingress and egress and that they cut trees on any portion of the property for the purpose of firewood.
Joseph O. Lambert, the father of plaintiffs, died on December 31, 1940. On April 27, 1942, his succession and that of his wife, who predeceased him, was opened in the Parish of St. Charles. Plaintiffs, together with the two minor children of their predeceased sister, Lillian Marie Lambert, wife by first marriage of Michel Matherne and by second marriage of Frank Bourgeois, were recognized as the sole heirs of their father and placed in possession of an undivided 1/9th interest in and to the Lambert Plantation.
On May 15, 1941, seven of the nine children of John Lambert, by act before C.L. Melancon, Clerk of Court and Ex Officio Notary Public for the Parish of St. Charles, sold to the defendant, Gus Lass, all of the Cypress timber and Tupelo Gum timber located on Lambert Plantation excluding any timber situated on lot No. 3 which had been allocated to plaintiffs' father, Joseph O. Lambert, under the Blalock plan.
On July 27, 1941, plaintiffs instituted the present action against Lass seeking to enjoin him from going on the plantation and removing the timber therefrom on the ground that they were the owners of a 10/99ths undivided interest in the property. They prayed for the issuance of a temporary restraining order and that the defendant be cited to show cause why a preliminary injunction should not be granted. On the same day, and in accordance with the prayer of the petition, the Judge issued a temporary restraining order and a rule nisi returnable on July 7, 1941. On the return day of the rule, the matter was continued until July 17th and the temporary restraining order continued in effect until that date. On July 17th and July 27th further continuances, under like circumstances, were granted until August 16th, when the matter was heard on the rule nisi and judgment entered in favor of the plaintiffs making the rule absolute and authorizing the issuance of a preliminary injunction upon plaintiffs furnishing bond in the sum of $100. This judgment shows that the defendant, Lass, appeared at the trial of the rule in propria persona.
It further appears that the writ of preliminary injunction authorized by the court was never issued as plaintiffs did not furnish the bond. (Plaintiffs say that they did not furnish the bond because Lass agreed to the issuance of the injunction at the trial and promised that he would not attempt to cut timber on the property.)
Things remained in this state until July 16, 1945, or nearly four years later. On that date, the defendant, through counsel, appeared and filed a formal answer to the merits of the case. In this answer, he denied that plaintiffs were entitled to the relief prayed for and specially challenged the validity of the temporary restraining order previously issued, and the judgment of August 16, 1941, wherein a preliminary injunction was ordered conditioned upon plaintiffs giving bond for $100. This attack was based on the contentions that plaintiffs did not furnish a legal bond for the issuance of the temporary restraining order; that defendant was never served with notice that the rule was to be fixed for trial on August 16, 1941; that no evidence was offered in support of plaintiffs' allegations on the trial of said rule and that he was not present when the matter was taken up and judgment rendered, despite the fact that the judgment states that he appeared in person. Defendant further contended that his contract for the cutting of timber on the Lambert Plantation was valid in every respect and that plaintiffs were without interest in the land from which the timber was to be taken for the reason that their father, Joseph O. Lambert, together with other children of John M. Lambert, had partitioned his undivided interest in the property by the agreement entered into on September 11, 1928, hereinabove referred to.
After a trial of the case on the foregoing issues, there was judgment in favor of plaintiffs and against the defendant permanently enjoining the latter from going on to the land, or any part thereof, for the purpose of removing timber therefrom. *Page 916 
On this appeal, defendant has reurged the defenses set forth in his answer and also asserts that, since the evidence shows that plaintiffs, as heirs of their father, have taken possession of Lot No. 3 set forth in the plan of Blalock, they are estopped from now contending that the agreement of September 11, 1928, did not effect a full and final partition of the property.
[1, 2] The first point raised by the defendant is that the temporary restraining order was unlawfully issued because plaintiffs did not provide a valid bond. Assuming that plaintiffs did not give a good bond, we fail to see how this can have any effect whatever on the Judge's right to issue a permanent injunction after a trial of the merits of the case. The temporary restraining order expired by its own terms on August 16th 1941 at the time of the hearing of the rule nisi for a preliminary injunction (see Act No. 29 of 1924) and its validity has long since passed out of the case. If defendant had desired to test the legality of the order, he could have done so while it remained in esse by pursuing the procedure set forth in Act No. 29 of 1924.
[3] The next point raised by defendant relates to the alleged unlawful issuance of the preliminary injunction. This contention is likewise without merit. As a matter of fact, the writ of preliminary injunction was never issued for the reason that plaintiffs did not file the bond of $100 upon which the issuance of the injunction was contingent. Therefore, since defendant was not enjoined, he cannot complain. His counsel, however, proclaims that the judgment appealed from, which enjoins him permanently from cutting timber on the Lambert Plantation, is invalid for the reason that, where a preliminary injunction has not been formally issued, the court is powerless to grant a permanent injunction. In support of this contention, reliance is placed upon the decision of Austin v. Currie, 16 La. App. 375, 134 So. 723.
[4, 5] We find little substance in this postulation. Act No. 29 of 1924 applies exclusively to the issuance of temporary restraining orders and preliminary writs of injunction. It does not pertain to permanent injunctions which are final judgments issued after a trial on the merits of the controversy. See Paul v. Tabony, 1 La. App. 542 and City of New Orleans v. Canal Bakery, 3 La. App. 789. And, of course, it is not essential for a plaintiff to apply for or obtain either a temporary restraining order or a preliminary injunction in order to be granted a permanent injunction after a full hearing.
The case of Austin v. Currie, supra [16 La. App. 375, 134 So. 724], relied on by defendant, is clearly distinguishable from this one. That decision is authority only for the proposition that if a preliminary injunction has not been issued, a final judgment "perpetuating and maintaining the writ of injunction sued out herein" is without effect. The judgment appealed from in the instant matter does not perpetuate the preliminary injunction heretofore issued in the case. On the contrary, it permanently enjoins the defendant from trespassing and does not depend, for its vitality, on the alleged invalid preliminary injunction.
The main contention of the defendant on the merits of the case is that the agreement between John Lambert and his children, dated September 11, 1928, constituted a partition of the plantation in law and in fact. Plaintiffs, on the other hand, maintain that the act was no more than an agreement to partition the property after the death of John Lambert and, therefore, that it could not become legally effective as a settlement of the interests of the various heirs in and to the whole of the plantation unless and until a formal act of partition had been made subsequent to John Lambert's death.
[6, 7] It is conceded, as it must be by both sides, that plaintiffs' father, Joseph O. Lambert, inherited, at the death of his mother, an undivided 1/9th of a half, or 1/18th interest in the plantation. His father, John Lambert, owned a one-half interest in the property and had the usufruct of the other undivided one-half inherited by his children from their mother until September 11, 1928, when he conveyed his one-half interest to John Lambert Realty Company. After the conveyance by him to the corporation, he would have unquestionably had the right to have perfected a partition of the property between the corporation and his children. *Page 917 
However, he evidently did not wish to do so — for, in the act in which a partition was agreed upon, it was specifically provided that the tract of land would be partitioned among the heirs after his death. Upon John Lambert's death, his children inherited his stock in the John Lambert Corporation which owned a one-half undivided interest in the plantation. In these circumstances, it was necessary that his succession be opened and his children placed in legal possession of the stock owned by him before the contemplated partition could have been effected. It is shown by the record that, on September 11th 1928, the date upon which the agreement to make a partition was signed, John Lambert caused nine certificates of stock to be issued by John Lambert Realty Company in his name for five shares each; that he endorsed each certificate for five shares to each one of the children and that these certificates, so endorsed, were held by his attorney until after his death in 1931 at which time they were delivered to each heir by said attorney. This procedure did not effect a transfer of legal title to the shares to the respective heirs for as much as the delivery of the stock certificates after John Lambert's death can neither be regarded as a manual gift or as a disposition mortis causa. The agreement of September 11th 1928 is merely, in our view, an understanding between co-heirs and their father that, after the death of the latter, the inherited property would be divided in kind between them in conformity with a plan which had been made in 1924. It did not invest any one heir with full title to the portion of the tract allotted to him by the plan proposed in 1924 nor did it divest him of his undivided ownership in the whole. Therefore, plaintiffs, as heirs of Joseph O. Lambert, are the legal owners of an undivided one-ninth interest in and to the entire plantation and the contract made by defendant to purchase the timber on the property is ineffective as to plaintiffs since they are not parties thereto.
In support of his position that the agreement of September 11, 1928, constituted a partition of the property, counsel for defendant cites the following cases: Compton v. Mathews,3 La. 128, 22 Am.Dec. 167; Tippett v. Jett, 3 Rob. 313; Bacon v. Shultz, 35 La. Ann. 1059; Tyson v. Spearman, 190 La. 871,183 So. 201 and Stone v. Jefferson, 196 La. 1057, 200 So. 461.
A reading of these cases will readily reveal that none is in point. Compton v. Mathews, supra, merely holds that, where several coproprietors of a tract partition the property in accordance with a map or plat, it is not essential that each line be actually run and marked by the surveyor in order to sustain the legality of the division. We suppose that this case is cited by counsel for the purpose of overcoming the evidence produced by plaintiffs to the effect that the exact dimensions of Lot No. 3, which was to be allocated to their father, were neither surveyed nor marked by stakes on the property.
The cases of Tippett v. Jett, Tyson v. Spearman and Stone v. Jefferson, supra, relate to the legal effect of sales between heirs or partners by which a state of indivision of property jointly owned is terminated and held that such settlements are considered to be partitions irrespective of the fact that the agreements are labeled as sales between the parties.
The decision in Bacon v. Shultz, supra, can have reference only to defendant's plea that plaintiffs are estopped from now contending that a partition was not effected by virtue of the agreement of September 11, 1928. The opinion declares that, where a partition, defective in form and therefore voidable, has been made, it may be ratified by word and deed and, when so ratified, it becomes conclusive and binding. This authority does not control here for the simple reason that we do not regard the agreement of September 11th 1928 to be a partition of the plantation.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed. *Page 918